Helen M. Spano, Appellant, *v.* School District of The Borough of Brentwood, Appellee.

Argued November 7, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Eugene J. Reinbold,* with him *Beck, McGinnis & Jarvis,* for appellant.

*Thomas M. Rutter, Jr.,* with him *Goehring, Rutter & Boehm,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., March 7, 1974:
This is an appeal from an Opinion and Order of the Court of Common Pleas of Allegheny County dismissing Helen Spano as a professional employee on the ground of persistent and willful violation of the School Laws of this Commonwealth.

On August 1, 1966, Appellant began work as a "curriculum coordinator" with the Brentwood School District (School District). On November 7, 1966, she was called before the School Board, at which time she was asked to resign. She refused to do so and continued her duties as "curriculum coordinator" until she was suspended on April 20, 1967.

Charges of incompetency and persistent and willful violation of the school laws were leveled against Appellant on September 12, 1967, by Appellee School District and subsequently, nineteen separate hearing sessions were held by the School Board and voluminous testimony was compiled on these charges. On April 16, 1968, the School Board voted to sustain the charge and dismiss Appellant.

Appellant filed a timely appeal with the Superintendent of Public Instruction in accordance with Section 1131 of the Public School Code of 1949, Act of March 10, 1949, P. L. 30, Art. XI, as amended, 24 P.S. §11-1131. After argument, the Superintendent of Public Instruction determined (1) that Spano was a "professional employee" as that term is defined by the Public School Code of 1949; (2) that the incompetency charge against Spano was without merit, and (3) that she was properly dismissed by the School District for persistent and willful violations of the School Laws of Pennsylvania.

Thereafter, Spano filed an appeal with the Court of Common Pleas of Allegheny County. A counter-appeal was also filed by the School District question-

ing findings of the Superintendent of Public Instruction.

After argument, the Honorable CHARLES D. McCARTHY, by an Opinion and Order dated April 11, 1969, sustained Spano's appeal and dismissed the counterappeal of the School District, holding that Spano had not received a fair and unbiased hearing by the School Board. The School Board then appealed Judge McCARTHY's decision to the Supreme Court of Pennsylvania which subsequently vacated Judge McCARTHY's Order and remanded the record, affording Spano the opportunity to request a hearing de novo before the Common Pleas Court of Allegheny County.[1] Spano thereafter filed her request for a hearing de novo and testimony was taken before Judge LENCHER, who entered an Opinion and Order on December 6, 1972, sustaining the School Board's dismissal of Spano.

This decision has been appealed to this Court.

As always, it is important to outline this Court's scope of review before discussing the substantive issues involved. On appeal from an order of a court of common pleas, findings of fact, supported by competent evidence must be accepted by the appellate court. *Swick v. School District of Tarentum Borough*, 344 Pa. 197, 25 A. 2d 314 (1942); *Stroman v. Secretary of Education*, 7 Pa. Commonwealth Ct. 418, 300 A. 2d 286 (1973).

The court below determined that Spano, the Appellant here, was guilty of willful and persistent violation of the School Law and that her dismissal was therefore justified.[2]

---

[1] *Brentwood Borough School District Appeal*, 439 Pa. 256, 267 A. 2d 848 (1970).

[2] Both sides agree that violations of rules, regulations and orders of the Superintendent of a School District can be defined as "willful and persistent violation of the School Laws" and be a

Appellant specifically challenges many of the lower court's findings, in effect arguing that the conduct of the Appellant outlined by the lower court does not amount to a willful and persistent violation of the School Laws and that the lower court erred as a matter of law in so holding.

Initially, we observe that one of the Appellee's chief contentions and finding of fact No. 5 of the lower court is that the Appellant, fully aware of the scope and breadth of her duties as "curriculum coordinator" from the date of her hiring, constantly exceeded her defined authority. However, a careful review of the testimony indicates that when Brentwood School Superintendent Matika hired Appellant, he only generally described what her duties were as a "curriculum coordinator." Therefore certain allegations of the Appellee and some of the findings of the court below based on this erroneous finding, in no way reflect an attempt by Appellant to exceed her authority.

For example, we will examine the issue of the preparation of the teacher's manual. Matika asked Appellant to prepare a teacher's manual to instruct teachers and other personnel on school policy and proper administrative procedure. The manual had not been prepared in the last few years, so Matika presented the Appellant with an old manual, approximately ten years old, and told her to prepare one "similar" to it. Appellant prepared a manual, in draft form, which included a job description for principals, the "curriculum coordinator," and the Superintendent, matters not covered in the older manual. When this draft was presented to Matika, he deleted the job descriptions, and the final draft was completed by Appellant without the job descriptions and without comment.

---

basis for dismissal of a professional employee. *See Ambridge Borough School District v. Snyder,* 346 Pa. 103, 29 A. 2d 34 (1942).

This situation is cited by the Appellee and by the lower court as an instance of Appellant overstepping the bounds of her authority. We cannot agree with the interpretation placed on this and other episodes by the Appellee and the lower court, and feel constrained to comment that it appears to us that certain aspects of Appellant's conduct, cited as derogatory to the School District and in excess of her authority, were in fact laudatory; witness Appellant's tutoring of a student without pay and after school hours at his mother's request.

However, after the closest examination of the voluminous record in this case, we conclude that the Appellant did at times perform acts and make statements that cannot be explained merely as an overzealous and fresh approach to her new duties. Obviously, Appellant and Matika had different concepts of not only the functions of the job of "curriculum coordinator," but also the job's importance and position within the school district's administrative hierarchy. Since Matika was the Superintendent of the School District, and therefore her superior, it was incumbent on Appellant, *once she understood what was expected of her and her position,* to genuinely attempt to fulfill that role, or if that in good conscience proved impossible, resign.

We conclude that various acts of the Appellant, as found by the court below and supported by competent evidence, challenged and at times defied the authority of the Superintendent of Schools.

Appellant in effect called Superintendent Matika a liar and at a different time an "autocratic administrator." She also stated to the PTA President that Matika was not "her boss" and that she did not have to take orders from him. Failing to grasp her position on the school district staff, Appellant circulated a proposed kindergarten course of study without consulting

the kindergarten teachers or the elementary school principal. In addition, after the relation between Appellant and Matika deteriorated, Appellant had the President of the Teachers Association, a teacher also under the supervision of the Superintendent, initial all written correspondence with Matika. We feel these incidents justify the conclusion of the court below that Appellant exceeded her authority as "curriculum coordinator," openly questioned Matika's authority and violated his directives. Therefore, her dismissal must be sustained.

Order affirmed.