Gloria I. OBERMOELLER, Administratrix of the Estate of Joseph G. Vogel, a/k/a Joseph Vogel, Deceased, Plaintiff-Appellant,

v.

Delores M. SPECK, Defendant-Respondent.

No. 37068.

Missouri Court of Appeals, St. Louis District, Division Two.

Aug. 24, 1976.

Motion for Rehearing and for Transfer to Supreme Court Denied Nov. 12, 1976.

Application to Transfer Denied Jan. 10, 1977.

Warren W. Friedman, Speros B. Boudoures, St. Louis, Jesse E. Bishop, Clayton, for plaintiff-appellant.

Robert H. Burns, Clayton, for defendant-respondent.

DOWD, Judge.

A family dispute. The issue here is whether the defendant exercised undue influence over her father at the time certain savings accounts and funds were transferred into new joint accounts in the names of defendant's father and defendant. In this court tried case, the trial court found against plaintiff on the issue of undue influence in an action by the Administratrix of the estate of Joseph G. Vogel, deceased, to discover assets. This appeal followed.

The three principal contentions presented are: 1) that the court erred in finding no undue influence on the part of Delores Speck in causing her father Joseph Vogel to transfer assets to joint accounts with right of survivorship; 2) that there was error in admitting in evidence the deposition of Isabelle Timar; and 3) that there was error in the trial court's ruling that all of the testimony contained in the deposition of Isabelle Timar would be admitted into the record.

In reviewing a court tried matter we review both the law and the evidence, giving due regard to the opportunity of the trial court to judge the credibility of witnesses. Rule 73.01(3). Our Supreme Court recently clarified any confusion as to the scope of our review under this rule. In *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), the court held that the appellate court is to sustain the judgment of a court tried case "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, supra, at 32[1]. In light of this rule of appellate review, we affirm the judgment of the trial court.

The facts are in little dispute. Joseph G. Vogel died intestate on June 11, 1971 at age 71. His only heirs at law were four adult children: Gloria I. Obermoeller (plaintiff-appellant here), Donald Vogel, Joyce (also referred to as Joy) Rematkulis, and Delores M. Speck (respondent-defendant herein). Mr. Vogel died of cancer of the esophagus, and suffered a long and painful illness prior to his death. His second wife, Marie Lo-

vins, had died in 1967. Before her death she would do much of Mr. Vogel's paperwork for him since a problem of unsteady hands made it difficult for him to write. This work consisted of her filling out whatever document was under consideration at the time, and Mr. Vogel signing it. Delores M. Speck performed this service for her father after Marie's death. Delores also "double-checked" the figures from his bank statement against his checking account statement every four or five months, and would run errands for him, including depositing money in his checking account after he had endorsed the checks.

There is little evidence concerning the cordiality between Mr. Vogel and his children, except for Delores. It is clear from the facts that Delores and her husband Stephen Speck had a closer relationship with her father than existed between Mr. Vogel and his three other children. After his wife Marie's death, Mr. Vogel saw the Specks three or four times a week, whereas a family quarrel kept Mr. Vogel and his son Donald totally estranged from 1967 until 1971, when Mr. Vogel was first hospitalized. After the hospitalization appellant Gloria Obermoeller seems to have renewed her relationship with her father, for until that time there is no record of contact between her and her father, and not much contact even afterwards. Mrs. Isabelle Timar, Vogel's elder sister, testified in her deposition that in 1970 her brother told her he never saw Donald or Gloria but that Delores and Joy came to see him all the time. The facts thus demonstrate that it was Delores Speck and her husband Stephen who were the most devoted to Mr. Vogel. It was they who first noticed that he looked ill, made an appointment with a physician, drove him to the hospital, and paid that portion of the bill for the hospitalization which was not covered by Medicare. They visited him daily during all three periods of his extended hospitalization. Mr. Vogel stayed in Lutheran Hospital for the first time from March 6 to March 12, 1971. Then he stayed at the home of Delores and Stephen from March 12, to April 9, 1971, at which time he

returned to Lutheran Hospital until April 22, 1971. While staying with the Specks, Mr. Vogel was an outpatient at Lutheran Hospital. Delores would drive him there for cobalt treatments, alternating this service with Vogel's other daughter Joy. Delores paid the bill for the cobalt treatments from her own account. Appellant Gloria did not assist in this, nor did she visit her father during his first hospitalization, nor during the three weeks he stayed with the Specks after his first hospitalization. Delores' family loyalty extended to her father's invalid sister Isabelle ("Aunt Belle") Timar in whose house Vogel moved on April 22, 1971, after his second hospitalization. Delores had done all the weekly shopping for Mrs. Timar for the last 12½ years, whereas the other children did not visit her at all.

The issue of undue influence arises from transactions which occurred on April 22 and 23 of 1971. On these dates Delores and Stephen Speck went to the three savings and loan associations where Mr. Vogel had accounts, obtained withdrawal slips to close the accounts, took them to Mr. Vogel for his signature, returned, closed the accounts, and reopened them in the names of Joseph Vogel and Delores Speck, as joint tenants with the right of survivorship. The total assets amounted to $49,210.16 which included $3,260 cash which the Specks found in a brown envelope in the apartment of Mr. Vogel and deposited in a new account they opened in the name of Delores Speck and Joseph Vogel as joint tenants. Delores' interrogatories and Stephen's testimony state that they did this at Mr. Vogel's direction. On April 22 Vogel moved in with his sister Isabelle and on that afternoon she sat on the bed and listened as Mr. Vogel spoke to Stephen and Delores and directed them to open these joint accounts. Isabelle's deposi-

tion stated that her brother told her to "Stay here" on the bed, implying that he wanted her to witness what he was telling Stephen and Delores. Stephen testified that after Mr. Vogel signed the last withdrawal slip he said, "now that I got this all done let 'em fight," presumably referring to his other three children. This was corroborated by Isabelle Timar's deposition.

Appellant Gloria Obermoeller came to visit her father both at Isabelle Timar's and in the Gravois Rest Haven, where he spent the last month of his life. During these visits she would urge her father to make a will to divide his assets evenly five ways, between his four children and his stepson, Marie Lovins' son. Mrs. Timar testified that when Gloria suggested a will, Mr. Vogel replied, "Four years, four years", which is the amount of time that had elapsed since he had last seen Gloria and her brother Donald prior to his hospitalization. He further told Mrs. Timar frequently as well as Stephen Speck, that he didn't need to make a will, that it "was all taken care of." [1]

▉ Appellant's first argument is that the trial court erred in failing to find that her evidence established the presumption of undue influence. Before this presumption arises, there must be: 1) a fiduciary relation; and 2) some additional evidence from which undue influence may be inferred. *Davis v. Pitti,* 472 S.W.2d 382, 388[8] (Mo. 1971); *Steller v. Steller,* 401 S.W.2d 473, 478[7] (Mo.1966). Although there is some evidence that Delores Speck was in a fiduciary relation with her father, it is unnecessary that we decide this issue. In accordance with the standard of appellate review of court tried cases previously set forth, we find that there is substantial evidence to support the trial judge's finding that there was no evidence from which undue influence could be inferred. [2]

1. Section 369.150 RSMo 1969 authorizes the creation of joint accounts with the right of survivorship. In the case of *In re Estate of LaGarce,* 487 S.W.2d 493, 500–501 (Mo. banc 1972), our Supreme Court upheld this procedure even when used to effect testamentary dispositions outside the statute of wills. As long as there is no "fraud, undue influence,

mental incapacity or mistake, the survivor will become the owner of the account." *LaGarce, supra,* at 501[4].

2. The experienced trial judge prepared a detailed and analytical memorandum opinion which discussed the evidence and the reasons for his decision. We found the memorandum

Undue influence is defined "as that influence which, by force, coercion or overpersuasion destroys the free agency of the grantor to act." *Davis v. Pitti,* supra, at 387[6]; *Metter v. Janssen,* 498 S.W.2d 581, 583[2] (Mo.App.1973). There is no trace of "force or coercion" under these facts. Rather, the facts demonstrate that Delores was much more devoted to her father than the other three children. It is perfectly understandable that Mr. Vogel would view Delores as the sole natural object of his bounty. The weight of the evidence leads us to conclude that Mr. Vogel's decision to have all his assets transferred to joint accounts between himself and Delores was motivated by a genuine preference for her, and not the result of undue influence. This conclusion is buttressed by the additional fact that in 1967 he changed his $1,000 life insurance policy so that the beneficiaries were to be Delores and Stephen Speck. He did the same with a $5000 life insurance policy, although the date of this change is not in evidence. There is no claim that these changes were made as the result of undue influence. Yet, significantly, he excluded his other children and named only Delores and her husband as his beneficiaries.

■ Appellant challenges the admission into evidence of the deposition of Isabelle Timar on the ground that respondent had not previously established that Mrs. Timar was unable to be in court on that date. Her deposition was taken on June 24, 1974 and read into evidence on October 3, 1974. Rule 57.07(a)(3)(B) authorizes use of depositions for witnesses who cannot be in court due to "age, sickness, [or] bodily infirmity." The testimony of many witnesses, in addition to the deposition of Mrs. Timar herself, established that Mrs. Timar's physical infirmities prevented her from appearing in the courtroom, both on the date the deposition was taken and when it was read. She was 76 years old at the time of the deposition, had had infantile paralysis since the age of two, suffered from dropsy, heart trouble, high blood pressure and edema. A nurse came to her home weekly to take her blood pressure. She had only been out of her home three times in the last eleven years, and two of these occasions were trips to the hospital by ambulance. Rule 57.07(b) states that the "facts which would authorize the use of the deposition may be established by the testimony of the deposing witness . . . or by any competent evidence." The rule was followed and the deposition properly admitted.

Appellant further claims that the deposition was unauthenticated. The transcript reveals that the deposition was duly certified by the deposing reporter. The point is without merit.

■ Appellant's final contention also concerns the deposition of Isabelle Timar.

opinion very helpful. A portion of this opinion is set out as follows:

"This Court has an abiding conviction that, assuming for the moment that there was in fact and law a fiduciary relationship between Vogel and his daughter, no undue influence was exercised by the latter on the former, and the Court reaches this conclusion on the weight of the evidence standard as well as the credibility of witnesses norm. In other words, assuming for the moment that the burden was on Speck to disprove undue influence, this Court finds that she did in fact do so, and to hold otherwise would be to cast suspicion on the most innocent transaction between father and child. It is preposterous to postulate a proposition wherein a favorite child of a parent could not obey the wishes and desires of that parent relative to the latter's disposition of his property without becoming suspect, or being called upon under threat of pernicious mischief and nefarious activity to advance a complete stranger to do the bidding of the father just in order to escape the accusations. This is not the law, nor should it be the law.

"Throughout the cases cited there runs a strain or pattern of circumstances which the courts consider important i. e. bodily custody of deceased, mental as well as physical weakness of deceased, lack of consideration (love of child not falling within this category), secrecy, etc. On the trial of this case the Court is convinced that Vogel not only knew what he was doing, but wanted to do what he did in fact accomplish and this without any importuning on the part of Speck. His physical and mental apparatus was not so badly impaired; from anyone's point of view as to deprive him of his prophetic proclamation, 'now let them fight.'"

He claims the court erred in ruling approximately midway through the reading of the deposition, that the court would admit the remaining portions of the deposition regardless of the objections raised by appellant. Appellant fails to point out in the Point Relied On what portion of the deposition was erroneously admitted, and "wherein and why [it is] claimed to be erroneous." Thus he fails to preserve this contention for appellate review. Rule 84.04(d). However, we note that the trial judge midway through the reading of the deposition stated that he was going to admit the entire deposition but would permit attorneys to make objections. Objections were made and ruled on by the court. Furthermore, even if the entire deposition is excluded, we find there is substantial evidence to support the trial court's decision. The contention is without merit.

The judgment is affirmed.

CLEMENS, P. J., and STEWART, J., concurs.

