Orville Harris, Appellant *v.* Commonwealth of Pennsylvania, Secretary of Education, Appellee; School District of Philadelphia, Intervening Appellee.

Argued December 9, 1976, before Judges CRUMLISH, JR., MENCER and BLATT, sitting as a panel of three.

*Robert M. Rowlands,* with him *Daniel P. Carter,* for appellant.

*Edward A. Miller,* Assistant Attorney General, for appellee.

*Robert T. Lear,* for intervening appellee.

OPINION BY JUDGE CRUMLISH, JR., April 25, 1977.

Orville Harris (Appellant) appeals from a decision of the Secretary of Education which affirmed his dismissal as a professional employee of the School District of Philadelphia (Philadelphia) by its Board of Public Education (Board).

Appellant instituted this appeal pursuant to Section 1132 of the Public School Code of 1949 (Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §11-1132. Appeal was taken prior to the amendment of Section 1132 which now places appeals under the Administrative Agency Law.[1] Pursuant to the Code then in effect, Appellant had the right to request a trial de novo before this Court and, upon his request, the trial was held on October 20, 1975.

Although the record of the proceedings before the Board and Secretary of Education was received into

---

[1] The Code was amended December 21, 1973, No. 150, §1.

evidence by this Court, the following findings of fact are based solely upon the testimony, evidence and documents presented to this Court on October 20, 1975.[2] Based on the foregoing, we enter the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. At all times relevant hereto Appellant was a tenured professional employee of Philadelphia within the meaning of Section 1101 et seq. of the Code, 24 P.S. §11-1101 et seq.

2. At all times relevant hereto, Philadelphia had a valid regulation forbidding teachers to administer corporal punishment to students.

3. Appellant had actual knowledge of the regulations of Philadelphia forbidding teachers' use of corporal punishment.

4. In September of 1970, while teaching at the M.H. Stanton School, Appellant administered corporal punishment to one Gregory Davis, a fourth grader.

5. In October of 1970, Appellant administered corporal punishment to one Derek Burnside, a sixth grader, a student at the M.H. Stanton School.

6. As a direct result of these incidents, Appellant was transferred to the McKinley School. At a conference with supervisory personnel prior to transfer, Appellant was specifically warned that any further administration of corporal punishment would result in his dismissal.

7. In September, 1971, Appellant was accused by a parent of administering corporal punishment to his child, one Sammy Vàrgas, a student at the McKinley School. We cannot find that Appellant administered corporal punishment to Sammy Vargas.

---

[2] Appellant complains that the admission into the record of the testimony below was an error. The testimony was admitted because of the extreme length of the proceedings below and subject to all objections relating to its admissibility and competence.

8. When the parent of Sammy Vargas attempted to discuss this matter with Appellant, he sought to have the parent arrested.

9. At all times relevant hereto, Philadelphia had a policy forbidding the punishment of students through isolation without supervision.

10. Appellant isolated two or three students of the McKinley School in a storage room without proper supervision. Appellant was involved in an altercation with a faculty member who discovered these students isolated in the storage room.

11. As a result of the events set forth in Findings 7, 8 and 10, Appellant was suspended on September 17, 1971.

12. On March 21, 1972, Appellant was formally informed of the commencement of proceedings for his dismissal. The Board alleged the events listed above, together with other incidents, and concluded: "Your continued violation of school policy against the administration of corporal punishment by teachers constitutes insubordination. This, in addition to your consistently uncooperative and insolent attitude toward parents and staff personnel, your extremely demeaning treatment of students, makes you incompentent [sic] to teach in the School District of Philadelphia."

13. The Board held hearings on April 4, 1972, April 12, 1972, May 18, 1972, and on June 27, 1972. On September 11, 1972, the Board voted unanimously to dismiss Appellant from his job with Philadelphia.

14. Following a hearing, on December 31, 1973, the Secretary of Education sustained the dismissal of Appellant on the grounds of persistent and willful violation of the school laws.

CONCLUSIONS OF LAW

1. The administration of corporal punishment to Gregory Davis and Derek Burnside was a violation of the regulations of Philadelphia.

2. The isolation of two or three students without proper supervision was a violation of the regulations of Philadelphia.

3. The violations of the regulations of Philadelphia were persistent and willful violations of the school laws of the Commonwealth as they are defined in Section 1122 of the Code, 24 P.S. §11-1122.

4. Pursuant to Section 1122 of the Code, 24 P.S. §11-1122, Appellant is dismissed as a professional employee of the School District of Philadelphia.

### DISCUSSION

Based upon the above findings of fact, this Court finds that the events set forth in Findings 4, 5 and 10 above were persistent and willful violations of the school laws[3] and affirms the dismissal of Appellant from his job as a professional employee of the School District of Philadelphia.

Philadelphia has had a long standing rule forbidding a teacher to administer corporal punishment. In 1955 Philadelphia promulgated "Administrative Bulletin 22, 22A and 22B" (Bulletin) signed by the then-superintendent of school, entitled "Discipline for Constructive Citizenship." Bulletin 22A, directed at teachers, stated at III A 4(e): "Do not use the following forms of punishment: (1) Corporal punishment; . . . (8) Isolation from group without supervision." Administrative Bulletin 22B reserves the right to school principals to inflict corporal punishment. This rule is periodically brought to the attention of teachers and there can be no doubt that Appellant was aware of it. Although no evidence was produced before this Court to show that this resolution was ever adopted by the Board, minutes were introduced showing that it had been put before the Board. The Board regards the Bulletin as a validly

[3] Section 1122 of the Code, 24 P.S. §11-1122.

promulgated regulation, as is demonstrated by its proposal to amend the Bulletin in March of 1971.

Appellant claims that the Bulletin was overruled by the Board on March 29, 1971, when it adopted certain ''Recommendations on Violence and Discipline.'' This is plainly not the case. The ''Recommendations on Violence and Discipline'' stated that a new code was to be prepared by the administration. Testimony heard by this Court revealed that a new code was, in fact, never drawn, and that the old regulations remained in effect. Moreover, the two most serious incidents of corporal punishment took place prior to the March 29 meeting.

Appellant further contends that Section 1317[4] of the Code, 24 P.S. §13-1317, gives a teacher an absolute right to inflict corporal punishment in spite of rules of the local school board to the contrary. There can be no doubt of the absolute right of the School Board to regulate student discipline. Section 510 of the Code[5] provides:

Rules and regulations; safety patrols; school police

The Board of school directors in any school district may adopt and enforce such reasonable rules and regulations as it may deem necessary and proper, regarding the management of its school affairs and the conduct and deportment

---

. [4] §13-1317. Authority of teachers, vice principals and principals over pupils

Every teacher, vice principal and principal in the public schools shall have the right to exercise the same authority as to conduct and behavior over the pupils attending his school, during the time they are in attendance, including the time required in going to and from their homes, as the parents, guardians or persons in parental relation to such pupils may exercise over them. As amended 1963, July 15, P.L. 315, §1.

[5] 24 P.S. §5-510.

of all superintendents, teachers, and other appointees or employes during the time they are engaged in their duties to the district, as well as regarding the conduct and deportment of all pupils attending the public schools in the district, during such time as they are under the supervision of the board of school directors and teachers, including the time necessarily spent in coming to and returning from school.

*See also Girard School District v. Pittenger*, 29 Pa. Commonwealth Ct. 176, 370 A.2d 420 (1977). Although Section 1317 of the Code has been interpreted to permit corporal punishment, it does not mandate it. It is up to each school district to determine how, if at all, corporal punishment will be administered.

There can be no doubt that Appellant actually inflicted punishment upon students contrary to the rules in the Bulletin. Appellant was accused of four acts of misconduct. They were the administration of corporal punishment to Gregory Davis, Derek Burnside, Sammy Vargas, and isolating two or three students in an unsupervised storage room. We shall discuss each incident individually.

Appellant admitted before this Court that he slapped Gregory Davis. On cross-examination, the following testimony before the Board was read to and adopted by him.

"MR. ROWLANDS: Mr. Harris demonstrated that what he did was touch me with the back of his left hand on my jaw.

CHAIRMAN DAVIDOFF: He slapped the youngster on the right side of his face with the back of his hand. Is that what you mean by flicked?

THE WITNESS: Yes. It was an attention getting thing, not a punishment. We were going down the steps."

This Court does not consider slapping fourth graders on the face an attention getting device. Considering the circumstances of the incident, this Court finds that Appellant did administer corporal punishment to Gregory Davis.

Appellant also admitted slapping Derek Burnside, but he contends that it was done in order to restrain the student who was creating a hazard by running down a staircase. This Court cannot see how slapping the student on the face would restrain him. If it is one's real intention to restrain rather than punish, the more appropriate action would be to hold the student in position and not to strike him. Accordingly, Appellant did, in fact, his protestations to the contrary notwithstanding, administer corporal punishment to Derek Burnside.

Touching Sammy Vargas in order to remove a pencil from his hand cannot be considered in this Court's judgment to be corporal punishment. Appellant also admitted putting two or three students, who had been disrupting the class, in an unsupervised closet. This represented a disciplinary action forbidden by the Bulletin and was a willful violation of the school laws.

Section 1122 of the Code permits a professional employee to be terminated for "immorality, incompetence, intemperance, cruelty, persistent negligence, mental derangement, advocation of or participation in un-American or subversive doctrines, persistent and willful violation of the school laws of the Commonwealth . . . ." We have interpreted "willful violation of the school laws" to include not only violations of the Code, but also violations of rules and orders of the employee's superior. In *Johnson v. United School District,* 201 Pa. Superior Ct. 375, 191 A.2d 897 (1963), the Court held that a teacher could validly be dismissed for failing to attend an "open house"

for the parents of her students. The Court wrote, at page 380, ''The plaintiff here not only closed her eyes as to a directive, but arrogantly persisted in her announced intention not to comply with the directive. This conduct was an act of negligence and would also be classified as persistent and willful violation of the school laws.''

More recently, this Court held in *Spano v. School District of Brentwood,* 12 Pa. Commonwealth Ct. 170, 316 A.2d 162 (1974), that an administrator who refused to confine her activities to those which the superior directed her to perform could be dismissed for persistent and willful violation of the school laws. The Court stated ''it was incumbent on appellant, *once she understood what was expected of her and her position,* to genuinely attempt to fulfill that role, or if that in good conscience proved impossible, resign.'' (Emphasis in original.) The fact that there was no school board resolution specifically defining her duties, did not affect the result.

Therefore, the administration of repeated punishment, in violation of the Bulletin, constitutes a willful and persistent violation of the school laws. The dismissal of Orville Harris from his employment as a professional employee of the School District of Philadelphia is affirmed.

Accordingly, we

### ORDER

AND Now, this 25th day of April, 1977, the dismissal of Orville Harris as a professional employee of the School District of Philadelphia is hereby affirmed.