**John GIERINGER, Appellant,**

v.

**CENTER SCHOOL DISTRICT NO. 58, Respondent.**

**No. 30093.**

Missouri Court of Appeals, Western District.

June 11, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 12, 1979.

Application to Transfer Denied Sept. 11, 1979.

George E. Kapke, Piedimonte & Cochran, Independence, Irving Achtenberg, Achtenberg & Achtenberg, Kansas City, for appellant.

Hollis H. Hanover, Popham, Conway, Sweeny, Fremont & Bundschu, P. C., Kansas City, for respondent.

Before HIGGINS, Special Judge, Presiding, and SWOFFORD, C. J., and WELBORN, Special Judge.

ROBERT R. WELBORN, Special Judge.

Proceeding for review of order of board of education terminating a tenured school teacher. Circuit Court affirmed order. Teacher appeals.

Appellant, John Gieringer, was a tenured teacher in the Center School District during the 1976–1977 school year.

Section 168.114, RSMo 1969, provides, in part:

"1. An indefinite contract with a permanent teacher shall not be terminated by the board of education of a school district except for one or more of the following causes:

\* \* \* \* \* \*

"(4) Willful or persistent violation of, or failure to obey, the school laws of the state or the published regulations of the board of education of the school district employing him; \* \* \*."

The Center School District had a published "Administrative Guide for Personnel" which included the following:

"VII. Regulations Affecting Pupils

"5. All cases of corporal punishment will be administered in accordance with the State law and subject to the following school district regulations:

"a. In no case shall a punishment be inflicted by striking or slapping on or about the head.

"b. Corporal punishment shall not in any case be administered in the presence of another pupil.

"c. Any corporal punishment shall be administered in the presence of at least one other witness who shall be a member of the school staff, or by a teacher, with the consent and in the presence of the principal.

"d. The principal shall have recorded in writing any incident of corporal punishment specifying the cause, method used, and person witnessing and shall submit a copy of this record within one day to the office of the Superintendent.

"e. No teacher will keep an instrument of discipline in the classroom. Paddles of any description must be kept in the office."

On October 22, 1976, the superintendent of the Center District filed with its board "Formal Charges Against John Gieringer," charging the appellant with willful or persistent violation of the foregoing regulation, and requesting that Gieringer's contract with the district be terminated.

A hearing on the charges was held before the board. On November 29, 1976, the board rendered a decision which included the following findings:

"3. That on or about October 9, 1974, John Gieringer, as punishment for Chris Michelson's standing when instructed to sit, placed his hand on Chris Michelson's head and forced Chris Michelson to the floor. John Gieringer then pulled Chris Michelson's head forward and 'slammed' it backward into the stage wall. That the punishment described in this paragraph was administered in the presence of other pupils, without the consent of and outside the presence of the principal, and without the attendance as a witness of another member of the school staff. That upon being released from class Chris Michelson went to the school nurse with a headache and dizziness and was released from school early by reason of his headaches and dizziness. Following the above described incident a conference was held among John Gieringer, Barbara Tierney (Chris Michelson's mother) and the building principal, Ron Hoffman. Mrs. Tierney complained of Mr. Gieringer's actions and after the meeting, Mr. Hoffman instructed Mr. Gieringer not to engage in similar activity in the future.

"4. That on or about December 4, 1974, John Gieringer, as punishment for Matthew McCain's moving after being instructed to remain still, grasped Matthew McCain by the chest and shoulder with sufficient force to inflict a bruise on Matthew McCain's chest and threw Matthew McCain against a wall with sufficient force to cause Matthew McCain to strike his head on the wall, causing a bump to appear on the back of Matthew McCain's head. That the punishment described in this paragraph was administered in the presence of other pupils, without the consent of and outside the presence of the principal, and without the at-tendance as a witness of another member of the school staff. That following the incident described in this paragraph, Sue Johnson (Matthew McCain's mother) called Mr. Hoffman to complain of Mr. Gieringer's actions. That Mr. Hoffman thereafter again instructed Mr. Gieringer not to engage in similar activity in the future.

"5. That on or about January 31, 1975, John Gieringer, as punishment for Mike Jacoby's failure to utilize proper technique in throwing a basketball against the wall, grasped Mike Jacoby by the shoulders and shook him with sufficient violence to cause Mike Jacoby to lose his balance and fall to the floor. That the punishment described in this paragraph was administered in the presence of other pupils, without the consent of and outside the presence of the principal, and without the attendance as a witness of another member of the school staff. That following the above described incident Mr. Hoffman conferred with Mr. Gieringer and again instructed him not to engage in similar activity in the future. Mr. Hoffman also directed a written memo dated February 3, 1975, to Mr. Gieringer (Superintendent's Exhibit No. 9) concluding with the statement 'I will expect you not to shake the students again in the future.'

"6. That on or about October 20, 1976, John Gieringer, as punishment for Mike Borylo's picking up a bean bag after having been instructed not to do so, grasped Mike Borylo with sufficient force and shook Mike Borylo with sufficient violence to break an honor society pin and chain Mike Borylo was wearing and to tear Mike Borylo's shirt. That the punishment described in this paragraph was administered in the presence of other pupils and without the consent of and outside the presence of the principal. A portion of the punishment was witnessed by another member of the school staff but said witness was not in attendance for the purpose of witnessing the punishment as required by the regulation but was rather a witness through inadvertence and without the knowledge of Mr. Gieringer. That following the incident described in this paragraph, Mary Borylo (Mike Borylo's mother) came to school to complain to Mr. Hoffman of Mr. Gieringer's actions."

The board found that Gieringer's conduct in each of these instances was a willful violation of the regulation and terminated his contract with the Center District.

Appellant filed a petition for review in the circuit court. The order of the board was affirmed and this appeal followed.

A brief was filed on behalf of appellant in this court. Two points were stated in the brief. The first relied upon a decision of the Eight Circuit Court of Appeals, ordering appellant's reinstatement as a teacher following his discharge by the board in 1970. *Gieringer v. Center School District No. 58*, 477 F.2d 1164 (8th Cir. 1973). The second point was:

"The Court erred in affirming the judgment of the Board of Education in that the Board policy appellant is accused of violating is vague and indefinite and did not sufficiently advise the appellant of the conduct expected of him."

After respondent's brief had been filed, appellant employed other counsel who filed a reply brief on behalf of appellant, stating the following points:

"I. TEACHER DID NOT INTENTIONALLY ADMINISTER CORPORAL PUNISHMENT.

"II. THERE WAS NO SUBSTANTIAL EVIDENCE THAT TEACHER WILLFULLY VIOLATED ANY BOARD REGULATION.

"III. THE INCIDENTS WERE NOT VIEWED BY THE ADMINISTRATION AS CORPORAL PUNISHMENT IN VIOLATION OF THE BOARD REGULATION."

■ Respondent has moved to strike appellant's reply brief on the grounds that it attempts to present assignments of error for the first time and to enlarge upon original submissions of error. A reply brief may not be used for such purpose. *Morris v. Reed*, 510 S.W.2d 234, 238[4] (Mo.App.1974); *Christ v. Tice*, 578 S.W.2d 319, 322[7] (Mo. App.1979). Appellant supports his reply brief on the grounds that it is designed to show that "the defense of 'vagueness' is proper and valid as applied to the facts of

this case." So limited the brief will be considered and the motion to strike will be overruled. The basic question for determination is that stated in appellant's brief, i. e., whether the regulation in question is too vague and indefinite to advise appellant of the conduct expected of him. No new or additional points will be considered as having been raised in appellant's reply brief.

The test to be applied in determining the validity of the regulation as applied to appellant is stated in *Giessow v. Litz*, 558 S.W.2d 742, 748[5–8] (Mo.App.1977): " * * * [A] standard is not vague if the code is set out in terms which an ordinary person exercising common sense can sufficiently understand and comply with without sacrifice to the public interest."

■ Would an ordinary person exercising common sense sufficiently understand that a teacher's forcing a pupil to the floor by placing a hand on his head and then "slamming" his head into a wall is corporal punishment? Would he understand that grasping a pupil by the chest and shoulder with sufficient force to inflict a bruise and then throwing him against a wall with sufficient force to cause a bump to appear on his head is corporal punishment? Would he understand that grasping a pupil by the shoulder and shaking him with sufficient violence to cause him to lose his balance and fall to the floor is corporal punishment? Would he understand that grasping a pupil and shaking him with sufficient violence to break a chain the pupil was wearing and tear buttons from his shirt is corporal punishment?

When, as in this case, such actions are undertaken by a teacher to correct the pupil's failure to comply with the teacher's direction, the teacher must be aware that he has resorted to force applied to the pupil's body as a reprisal for the pupil's disobedience. That is the essence of corporal punishment. In view of the board's findings as to appellant's acts, there is no need to consider whether or not "grabbing and shaking" a pupil, which, according to appellant, is all that he did in each of the cases, is corporal punishment. The acts found by the board were in excess of such means and

were of punitory nature, rather than merely an effort to obtain the pupil's attention. Argument based upon other teachers' understanding of "grabbing and shaking" as not being corporal punishment is likewise irrelevant in the light of the board's findings.

Appellant argues that, in his conferences with school officials concerning the incidents which were the basis for the board's action, no reference was ever made to the corporal punishment regulations. He also points to the fact that in no case did the principal record in writing the incident and submit a copy of such record, as required by subparagraph d of the regulation. Appellant argues that, if the school authorities failed in this respect, it evidences that they did not consider the incidents to have involved corporal punishment within the meaning of the regulation and thus supports the contention that the regulation is too vague to support the board's action.

The testimony regarding appellant's conferences with school officials shows that the discussions primarily centered upon differences regarding appellant's ideas regarding "grabbing and shaking" as a disciplinary procedure. As above noted, the occurrences which resulted in appellant's dismissal, as found by the board, went beyond "grabbing and shaking." Therefore, evidence pertaining to the officials' view of that procedure would not demonstrate ambiguity or lack of clarity in the rule as applied by the board.

As for the failure of the principal to report the incidents to the superintendent, the principal's explanation that he considered the rule to require a report only of corporal punishment applied pursuant to the rule is reasonable. The failure to report the incidents involving appellant does not evidence that such failure was the result of questionable application of the rule to appellant's actions.

Authorities relied upon by appellant are not particularly helpful in this case. *Board of Education v. Shank*, 542 S.W.2d 779 (Mo. 1976), recognizes that striking pupils about the face, head, shoulders and buttocks is corporal punishment. There is no indication in that case that the methods there involved were the only ones which might amount to corporal punishment. The same is true of *Glaser v. Marietta*, 351 F.Supp. 555 (D.C.1972), where paddling was recognized as corporal punishment. *Harris v. Secretary of Education*, 29 Pa.Cmwlth. 625, 372 A.2d 953 (1976), distinguishes between mere restraint and corporal punishment. Again, the action of appellant here went beyond mere restraint.

Appellant calls attention to the quotation from Blackstone, found in *Ingraham v. Wright*, 430 U.S. 651, 661, 97 S.Ct. 1401, 1407, 51 L.Ed.2d 711 (1977), as follows:

"Blackstone catalogued among the 'absolute rights of individuals' the right 'to security from the corporal insults of menaces, assaults, beating, and wounding,' 1 W. Blackstone, Commentaries *134, but he did not regard it a 'corporal insult' for a teacher to inflict 'moderate correction' on a child in his care."

"Moderate correction" would appear to denote the limit of acceptable corporal punishment, rather than to authorize such procedure as a corrective measure apart from corporal punishment.

Appellant asserts that the decision in *Gieringer v. Center School District No. 58*, 477 F.2d 1164 (8th Cir. 1973), precluded the board's exercise of jurisdiction in this case. In that case, the court overturned a board order discharging appellant on grounds wholly unrelated to those of the present case. Appellant offers no authority for the argument that such holding precluded the action here taken by the board in a different and unrelated proceeding. The previous case decided only the matter then before the court and did not preclude the board's action in this matter.

In his brief, appellant also states that the board prevented him at the hearing from presenting evidence or cross-examining witnesses to show that the true motive of the board in this case was to infringe upon appellant's constitutionally protected right of freedom of speech. Appellant cites no page references in the transcript in which

such action was taken. It is not the duty of this court to search the record for such matters and this point will not be pursued.

Judgment affirmed.

All concur.