658 S.W.2d 956 (1983)
In re the ESTATE OF Charles Harvey HAYES, Deceased.
Dave C. MITCHELL, Personal Representative, Plaintiff-Respondent,
v.
Clarence HAYES, Defendant-Appellant, and
Rheva Hayes, Defendant.
No. 12947.
Missouri Court of Appeals, Southern District, Division One.
October 5, 1983.
*957 Bradford E. Ellsworth, Cabool, for plaintiff-respondent.
William E. Gladden, Houston, for defendant-appellant.
TITUS, Judge.
Charles Hayes (decedent) died intestate October 30, 1981. He was survived by three children and a brother, Clarence Hayes the defendant. The administrator of decedent's estate, per § 473.340[1], brought an action against defendant and spouse to discover assets. Following an August 12, 1982, trial to the court, a judgment was entered requiring defendant Clarence Hayes to pay plaintiff (a) $10,796.25 plus interest from and after November 27, 1981; (b) $12,832.26 plus interest from and after January 4, 1982; and (3) $203.00 plus interest from and after October 30, 1981. Defendant appealed.
Plaintiff's evidence concerned a checking account in and various certificates of deposits (CD's) issued by a Licking, Missouri bank. The bank's president testified that on the date of death the bank had a checking account in the name of decedent and/or defendant with a balance of $203.18 and two outstanding CD's in the principal sums of $10,000 and $12,000 payable to decedent and/or defendant as joint tenants with right of survivorship. Testimony anent the CD's was prolix as the president was permitted to testify concerning CD's that had been purchased and cashed prior to the purchase of the two CD's in question.[2] Two CD's, one for $10,000 and the other for $12,000, were purchased by decedent and, upon his specific instruction, were made payable to himself and/or defendant as joint tenants with right of survivorship. When these two CD's became payable and were paid, their proceeds were used to purchase the two CD's involved in this cause, which were made payable in the same manner as those they replaced. Consequently and apropos of the $10,000 CD and the $12,000 CD outstanding and payable to decedent and/or defendant when the former died, the bank, per § 362.470, was obliged to and did when they matured pay the value of the CD's to "the survivor ... of them ... whether or not the names are stated in the conjunctive or the disjunctive or otherwise."
When called as a witness by plaintiff, defendant testified decedent went south in the winters and, during such absences from Licking, relied on defendant to assist with his business, such as by writing checks to pay decedent's insurance premiums, taxes, etc. Defendant also stated that he kept a record of when the joint CD's matured so they could be renewed and that if decedent was in Licking at that time he would effect renewal, otherwise defendant attended to the task. The other testimony adduced at trial, all by plaintiff, except as later noted, *958 is not germane to the only points relied on by defendant, which concern the court's rulings relative to the two CD's in question and the checking account.
In its findings of fact and conclusions of law the court nisi, as concerns this appeal, found that the $10,000 CD matured November 27, 1981, that the $12,000 CD matured January 1 (sic), 1982, that each CD was payable to decedent and/or defendant "as joint tenants with the right of survivorship" and that the CD's were cashed by defendant (after decedent's death) as each matured. The trial court also concluded, without stating why, that the joint CD's were procured by defendant's undue influence and fraud, that it was decedent's intention that defendant hold title thereto only as trustee for decedent, and that the CD's were assets of decedent's estate.
The two CD's in question, as found by the trial court, were payable to decedent and/or defendant as joint tenants with right of survivorship. Even if decedent furnished the money for the CD's in the first instance and intended to retain the beneficial interest in them during his lifetime, there appears no reason why defendant, as the surviving joint tenant, in the absence of fraud or undue influence, should not have become the owner thereof upon decedent's death. § 362.470; In re Estate of LaGarce, 487 S.W.2d 493, 500-501[3-4] (Mo. banc 1972). When the CD's were made as here, the presumption of joint tenancy became conclusive, subject to rebuttal on proof of fraud or undue influence. Blue Valley Federal Sav. and Loan v. Burrus, 637 S.W.2d 737, 742 (Mo.App.1982). Albeit defendant testified the two CD's were kept in his bank box, the trial court declared the whereabouts of the certificates were uncertain at the time of death. Perhaps this finding was predicated upon the testimony of a sister of decedent and defendant and her husband that on the day of the death they went to decedent's trailer home in Licking and found defendant's wife stuffing unidentified papers in a sack. Assuming, which we do not, this somehow indicated that decedent had maintained possession of the CD's, as noted in LaGarce, supra, the common law requirement of gift and delivery need not be met if the CD's are joint certificates under § 362.470. In reaffirming its holding in LaGarce, our supreme court pointed out that decedent could retain possession of the CD's without changing the nature of the joint tenancy. Pollock v. Brown, 569 S.W.2d 724, 731[7] (Mo. banc 1978).
For plaintiff to establish a presumption of undue influence, he must show (1) a fiduciary relationship and (2) some additional evidence from which undue influence may be inferred. Obermoeller v. Speck, 544 S.W.2d 21, 23[2] (Mo.App.1976). Albeit the trial court found a confidential or fiduciary relationship existed between decedent and defendant, it is not necessary for us to decide the correctness vel non of such a finding. Undue influence is defined as "that influence which, by force, coercion or overpersuasion destroys the free agency of the grantor to act." Davis v. Pitti, 472 S.W.2d 382, 387[6] (Mo.1971); Metter v. Janssen, 498 S.W.2d 581, 583[2] (Mo.App. 1973). There is no trace of force, coercion or overpersuasion under the facts in this case. Plaintiff's witness, the bank president, testified without contradiction that the two CD's first purchased by decedent and made payable to himself and/or defendant as joint tenants with right of survivorship were made payable in that manner upon the explicit instructions of the decedent. Although this witness could not recall who was present when the two successor CD's in question were issued, he did indicate that the $12,000 CD in esse at the time of decedent's death was purchased with funds from the first jointly owned $12,000 CD that had been endorsed and cashed by the decedent. In our opinion there was no evidence that defendant exercised any influence of any kind or character to secure the issuance of the two CD's in question in the joint names of the parties. As the record is wholly devoid of even a suggestion that defendant forced or coerced decedent to have the CD's issued in the form shown, the trial court erred in finding *959 the joint CD's were procured by defendant's undue influence. Cf. Estate of Linck, 645 S.W.2d 70, 75-76[6] (Mo.App.1982).
The terms "fraud" and "undue influence" are frequently used interchangeably. 37 C.J.S. Fraud § 1, at p. 207. However, as long ago noted, while undue influence is a fraud, fraud may exist without any undue influence. Undue influence upon a person consists of virtually substituting the will of the one exercising it for that of the other. Fraud consists of making that which is false appear to the other person to be true, thereby affecting his will. Undue influence need not be attended with fraud and fraud need not be attended with undue influence except insofar as the misrepresentation amounts to influence. There need be no pressure in fraud such as is necessary to constitute undue influence. Gordon v. Burris, 153 Mo. 223, 241, 54 S.W. 546, 551-552 (1899). Fraud is never presumed. Before evidence may be taken as reasonably supporting an inference of fraud, it must rise above mere suspicion, for a finding of fraud must rest upon something more substantial than suspicion, surmise and speculation. Cantrell v. Superior Loan Corp., 603 S.W.2d 627, 634-635[2][5] (Mo.App.1980). There is absolutely no suggestion in the evidence that the two CD's in question were issued and made payable jointly to decedent and defendant because of any fraud practiced upon decedent by defendant. The trial court's holding that the joint CD's were procured by defendant's fraud is as erroneous as its holding that the CD's were procured by defendant's undue influence.
Just as there was no justification for the trial court's holdings that the joint CD's were procured by defendant's undue influence and fraud, there was no justification for its ruling that defendant held title to the CD's only as trustee for decedent and the estate after his death. There was not a scintilla of evidence concerning the existence of an express trust. Therefore, the only other type of trust that might be applicable to the facts of this case is a constructive trust, an equitable device employed to remedy a situation where a person has been wrongfully deprived of some right, benefit, title or interest in property as the result of fraud or violation of confidence or faith reposed in another. Schultz v. Schultz, 637 S.W.2d 1, 4[2] (Mo. banc 1982). As already seen there was no evidence that the two CD's were placed in the joint names of decedent and defendant as the result of fraud and the evidence contained absolutely no suggestion that the CD's were so placed as the result of a violation of confidence or faith which decedent reposed in defendant. Without hesitation, we hold the trial court erred in declaring that defendant held title to the CD's only as trustee.
Defendant's claim that the trial court erred in its finding and judgment that the $203.00 checking account in esse at the time of decedent's demise was an asset of the estate need not be considered. This assignment of error was set forth for the first time in defendant's reply brief and, therefore, did not present the issue for appellate review. Application of Gilbert, 563 S.W.2d 768, 771[3] (Mo. banc 1978); Wilner v. O'Donnell, 637 S.W.2d 757, 764[11] (Mo. App.1982); City of Cape Girardeau v. Robertson, 615 S.W.2d 526, 531[5] (Mo.App. 1981); Abney v. Farmers Mut. Ins. Co. of Sikeston, 608 S.W.2d 576, 579[8] (Mo.App. 1980); Gieringer v. Center School Dist. No. 58, 585 S.W.2d 109, 112[1] (Mo.App.1979).
For the reasons aforesaid, that portion of the judgment herein ordering the defendant Clarence Hayes to pay plaintiff the sum of $203.00 plus interest from and after October 30, 1981, is affirmed. In all other respects the judgment is reversed.
FLANIGAN, P.J., GREENE, C.J., and CROW, J., concur.
NOTES
[1] Statutory references are to RSMo 1978.
[2] The witness referred to CD's other than those involved in this cause (no dates of issuance or payment shown, no amount stated, and not offered into evidence) as being the only CD's which decedent had purchased and directed to be made payable to himself only.