Lloyd F. Fink, Petitioner *v.* Board of Education of the Warren County School District, Respondent.

Argued June 1, 1981, before Judges MENCER, BLATT and MACPHAIL, sitting as a panel of three. Reargued December 15, 1981, before President Judge CRUMLISH and Judges MENCER, ROGERS, BLATT, WILLIAMS, JR., CRAIG and MACPHAIL.

*James P. McGarrity*, with him *Daniel W. B. Flint*, for petitioner.

*Joseph A. Massa, Jr.*, for respondent.

OPINION BY JUDGE MACPHAIL, March 15, 1982:

Lloyd F. Fink (Petitioner) appeals to this Court from a determination of the Secretary of the Pennsylvania Department of Education (Secretary), which affirmed the decision of the Board of School Directors of the Warren County School District (School Board), terminating Petitioner's employment on the grounds of persistent negligence and persistent and willful violation of school laws.[1]

---

[1] The School Board found that Petitioner's recitation of a spontaneous prayer, daily reading of a Bible story and willful, persistent

322

Petitioner was a tenured school teacher from 1973 to 1978. He worked under a professional employee contract at the Irvine Elementary School in Warren County. On April 10, 1978, at their monthly meeting, the School Board unanimously voted to permanently terminate Petitioner's employment. Written notice was sent to Petitioner on April 11, 1978 and a hearing was held on May 18, 1978 before the School Board.

At that hearing evidence was presented from which the School Board found as a fact that Petitioner had been conducting activities of a religious nature in the classroom. According to the findings of the School Board, the Petitioner opened both the morning and afternoon sessions of school by saying the pledge of allegiance, the Lord's Prayer and by reading a Bible story[2] to his fourth grade class. If the children were unaware of the meaning of a word or phrase used in the Bible story, Petitioner would explain it to them, but otherwise did not sermonize to his students. When the parents of two students objected to Petitioner's conduct involving prayer in the classroom, the principal of Irvine suggested that those children be excused from class during the opening exercises. Pursuant to this suggestion, those children were instructed to learn the Preamble to the United States Constitution. At first, these children were kept in the hallway—but

and continuous refusal to obey the reasonable orders of the Acting Superintendent of Schools of the Warren County School Districts were violations of Section 1122 of the Public School Code of 1949 (Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. 11-1122, which states that persistent negligence and persistent and willful violations of the school laws of this Commonwealth are a valid cause for the termination of a professional contract.

[2] The book used by Petitioner was entitled A. Maxwell, *Bible Story Volume VII* (1956). Petitioner read from this book for approximately three years, but before then he read from the Bible itself.

later were instructed to go to the library during the religious activities. By February 3, 1978, Mr. John Binney, Acting Superintendent of the Schools, met with Petitioner and informed him that the religious activities he was engaging in during school time were prohibited activities and that their continuance would place Petitioner's job in jeopardy. Mr. Binney told Petitioner to cease and desist from these religious practices. On February 7, Mr. Binney sent a follow-up letter to Petitioner asking him to stop the objectionable activities.

Although Petitioner did discontinue the religious activities in the afternoon session, he continued to say an audible extemporaneous prayer (instead of the Lord's Prayer) and to read one Bible story in the morning. During this time of prayer Petitioner stood with his head bowed and his eyes closed for approximately one-half minute. Students were never requested to participate in these prayers. Petitioner testified that he believed he had a constitutional right to do what he was doing and that he felt a need to ask God for His guidance at the beginning of each new school day. Petitioner testified that he was not attempting to proselytize his students.

On February 10, 1978, the principal again requested that Petitioner stop his activities completely and warned of the ramifications if he failed to do so. Nonetheless, Petitioner declared his intention to continue and was thereupon suspended from his employment pending a hearing before the School Board.

From those findings, the School Board concluded that Petitioner's conduct constituted a violation of the school laws and persistent negligence and, accordingly, dismissed him. In the opinion of the Secretary dismissing Petitioner's appeal, the findings of fact and conclusions of law of the School Board were affirmed.

It is the duty of this Court to affirm the order of the Secretary unless there was a violation of constitutional rights, an error of law, an abuse of discretion, or if a necessary finding of fact was unsuported by substantial evidence. *Gobla v. Crestwood School District,* 51 Pa. Commonwealth Ct. 539, 414 A.2d 772 (1980). We find no infirmity in the findings of fact nor do we find an abuse of discretion. Substantial evidence exists in the record to support each finding. Indeed, with very few exceptions of a minor nature, there is no conflict in the evidence. We must, therefore, look to the constitutional issues raised to determine whether a violation of constitutional rights occurred and to determine whether a refusal to comply with the superintendent's directives to cease religious exercises in the classroom was valid cause for termination of the contract of a public school teacher on the grounds of "persistent negligence" and "persistent and willful violation of the school laws" of the Commonwealth of Pennsylvania.

In his appeal, Petitioner raises several constitutional issues which we shall discuss seriatim.

I. Does an elementary public school teacher violate the Establishment Clause of the First Amendment by conducting religious activity in the classroom contrary to his supervisor's orders?

The First Amendment to the Constitution of the United States provides that: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; . . . ." U.S. Const. amend. I. Through the Fourteenth Amendment, the First Amendment has been made fully applicable to the states. *Cantwell v. Connecticut,* 310 U.S. 296 (1940).

Our United States Supreme Court has interpreted the First Amendment and held that the "Establish-

ment'' Clause prohibits a state or federal government from placing official support behind the tenets of one or of all orthodoxies. *Abington School District v. Schempp,* 374 U.S. 203, 222 (1963). In *Abington* the Court found that the mandatory reading of verses from the Bible and recitation of the Lord's Prayer during opening exercises of the school were "religious" in nature.[3] The Court held: "Given that finding, the *exercises and the law* requiring them are in violation of the Establishment Clause." *Id.* at 223 (emphasis added). In *Engel v. Vitale,* 370 U.S. 421, 430 (1962), the Court explained that these exercises are not mitigated by the fact that individual students may absent themselves upon parental request, for that fact furnishes no defense to a claim of unconstitutionality under the Establishment Clause.

Of course, the Petitioner points out that *Abington* did not bar all religious activities in the public schools but rather the decision was limited to a determination that the state's *requirement* that there be Bible reading and prayer in the schools was unconstitutional because it violated the state's mandated neutrality under the Establishment Clause. Seizing upon language in *Abington,* 374 U.S. at 225, that, "[n]othing we have said here indicates that such study of the Bible or of religion, when presented objectively as part of a secular program of education, may not be effected consistently with the First Amendment'', Petitioner contends that his religious activities were not compulsory and that the Commonwealth has enacted a law which

---

[3] In *Abington,* deciding companion cases, the Supreme Court ruled a Pennsylvania statute which required that ten verses of the Bible be read and the Lord's Prayer recited each day in public schools was violative of the Establishment Clause and held the "rule" of the Board of School Commissioners of Baltimore City, which was similar to the Pennsylvania statute, to be violative of the Establishment Clause also.

indeed, according to Petitioner, authorizes the very activities conducted by him. The statute to which Petitioner has reference is Section 1516.1 of the Code, 24 P.S. §15-1516.1 which reads as follows:

(a) In each public school classroom, the teacher in charge may, or if so authorized or directed by the board of school directors by which he is employed, shall, at the opening of school upon every school day, conduct a brief period of silent prayer or meditation with the participation of all the pupils therein assembled.

(b) The silent prayer or meditation authorized by subsection (a) of this section is not intended to be, and shall not be conducted as, a religious service or exercise, but shall be considered as an opportunity for silent prayer or meditation on a religious theme by those who are so disposed, or a moment of silent reflection on the anticipated activities of the day.

Petitioner argues that his conduct was permissible under this statute and if prohibited thereby, the statute is void for vagueness.

It will be noted, of course, that the silent prayer or meditation authorized by the statute must not be conducted as a religious service or exercise and that the prayer or meditation must be silent. That the primary effect and purpose of the Petitioner's opening exercises were of a "religious" nature is apparent from the evidence presented and corroborated by Petitioner's own testimony. When asked under oath, "What was the purpose of this prayer?", Petitioner responded, "I feel that I needed help to be a good teacher to do what I should during [sic] the classroom. I asked for help and guidance." We note that if that was the purpose then what Petitioner did was a religious exercise. In addition, subsection (a) says that the prayer shall be "silent". Petitioner's prayer was said aloud and in

a prayerful stance. Clearly, Petitioner's prayers were in violation of and not authorized by Section 1516.1.

We see nothing in the statute which would render it void for vagueness. The test is whether the statute gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. *Grayned v. City of Rockford,* 408 U.S. 104 (1972). Petitioner maintains that by authorizing certain activities but prohibiting others, the statute is necessarily vague. This is strained legal reasoning at best. It is clear to us that when the legislature enacted Section 1516.1 it was endeavoring to implement what *Abington* held to be permissible under the United States Constitution; no more and no less. As such, the statute withstands Petitioner's constitutional attack for vagueness.

We affirm the conclusions of the School Board and the Secretary that Petitioner's activities were in violation of the Establishment Clause and were not authorized by Section 1516.1 of the Code.

II. Does an elementary public school teacher's right to freedom of speech, free exercise of religion, and right to acadmenic freedom protect his saying of a prayer and reading of Bible stories to his fourth grade class?

We find that these constitutional rights of Petitioner were not violated. An elementary public school teacher's right to free exercise of religion does not give him the right to conduct religious activities in his classroom. It is well established that the freedom to hold religious beliefs is absolute: conduct in consequence of such beliefs, however, may be regulated or even prohibited by the state in the interest of peace, order and tranquility in society. *Poulos v. New Hampshire,* 345 U.S. 395 (1953). In *Stein v. Oshinsky,* 348 F.2d 999 (2d Cir. 1965), *cert. denied,* 382 U.S. 957 (1965) it was held that the constitutional rights of free

exercise of religion and freedom of speech do not require a state to permit "student-initiated" prayers in public schools.[4] The Court there went on to explain that "[n]either provision requires a state to permit persons to engage in public prayer in state-owned facilities wherever and whenever they desire." *Id.* at 1001. The Court concluded that the parents of children who instituted that litigation would have to be content to have their children pray "before nine and after three." *Id.* at 1002.

Here, Petitioner had been placed in a position of authority by the Commonwealth. When he was praying and reading religious material he was utilizing the power, prestige and influence conferred upon him by reason of his position as a teacher. Certainly, if a student's constitutional rights of free exercise of religion and freedom of speech do not require the state to permit student-initiated prayers during regular classtime, a teacher, who in a real sense represents the Commonwealth and the School Board, similarly cannot demand that he be permitted to initiate personal prayer when teaching. Furthermore, Petitioner's position as a teacher renders his actions in direct violation of the Establishment Clause. In *Lynch v. Indiana University Board of Trustees,* Ind. App. , 378 N.E. 2d 900 (1978), *cert. denied,* 441 U.S. 946 (1979), Lynch was a teacher at a state university who insisted on reading the Bible aloud at the beginning of each class. When told to stop his practice, Lynch refused whereupon he was discharged. In his court action for reinstatement, Lynch raised basically the same arguments as Petitioner in the instant case. The Court of Appeals of Indiana held that while the State had not directly par-

---

[4] In *Stein,* parents of several public school students sought an injunction requiring New York state to allow students to recite prayers on their own initiative.

ticipated in the Bible reading by Lynch, something the State was clearly prohibited from doing under *Abington* and *Engel,* it was the State who had placed Lynch in his position of authority, and therefore he, too, was subject to the same prohibition.

Moreover, in the instant case, we have noted previously, the Petitioner said his prayers for his own support. He said them aloud in the presence of the class. No one, and especially not the courts, would deny Petitioner the privilege of praying "before nine or after three" when not conducting class in a public school. Had the prayers been offered silently when the class was not in session, a different result well may have been reached in this case. The fact that Petitioner did utter the prayers audibly and in front of the class is what gives them the characterization of "religious exercises." The School Board was charged with the responsibility of assuring that no students were subjected to religious exercises which might be offensive to their own beliefs (or non-belief) even if they were not required to participate. It is the fact, that students are compelled to attend school and to be in the classroom when class is in session unless excused, that renders those students vulnerable to religious exercises to which they object and that is why the courts have consistently held that anything done in the classroom by the teacher during regular classroom time which promotes religion is forbidden by the constitutional requirement of the separation of state and church. And, as we have noted, the fact that those who do not wish to listen are excused from the classroom is not an acceptable solution because a stigma can be attached to such children as the record in the present case discloses. Education in the public school classroom is for all the students at the same time and in the same place.

The School Board here, as school boards everywhere, must be vigilant to assure that the wall between church and state is preserved. All we say here is that Petitioner's constitutional right to religious freedom must be balanced with the constitutional separation of church and state and where those two constitutional mandates are in conflict, as here, the latter must prevail.

Concerning Petitioner's contention that his actions were protected by his right to academic freedom, we find this argument to be spurious. As noted in the case of *Mailloux v. Kiley,* 323 F. Supp. 1387 (D. Mass. 1971), *aff'd* 448 F.2d 1242 (1st Cir. 1971), the concept of academic freedom is a species of the right to freedom of speech and the teacher's right must yield to compelling public interests of greater constitutional significance. In its opinion affirming the Federal District Court, the First Circuit Court of Appeals in *Mailloux* held that free speech does not grant teachers the absolute right to say or write whatever they please in a classroom.

We conclude that the Petitioner's individual constitutional rights were not violated by the order directing him to cease and desist from his religious exercises.

III. Does the state, by terminating the employment of a public school teacher for conducting religious activities in his fourth grade classroom show a hostility for religion or establish a religion of secular humanism?

The philosophy of "secular humanism" or "religion of secularism" as it is also known, refers to the sense of affirmatively opposing or showing hostility to religion thus preferring those who believe in no religion over those who do believe in religion. *Abington,* 374 U.S. at 225. *See Citizens for Parental Rights v. San Mateo County Board of Education,* 51 C.A. 3d 1, 124 Cal. Rptr. 68 (1975). Petitioner has misinterpreted

what has been described as the government's "neutrality" toward religion as hostility. As stated in *Engel*, 370 U.S. at 443, "The First Amendment teaches that a government neutral in the field of religion better serves all religious interests." The Commonwealth of Pennsylvania clearly has not preferred those who have no religious affinity over those who do. This is evidenced by the two provisions of the Code involved in this appeal. Section 1515(a) and 1516.1(a) provide respectively: (1) that the Bible and religious writings may be used and studied in a literature course, provided that course is on the secondary level and is elective and (2) that a silent and voluntary prayer is allowable in a classroom setting. A state which was hostile to religion would not make such provisions.

Since we have determined that no violations of Petitioner's constitutional rights have taken place, we must now resolve whether Petitioner's refusal to comply with the Superintendent's[5] directives to cease religious exercises in the classroom is a valid cause for termination. As noted earlier, persistent negligence and persistent willful violation of the school laws of the Commonwealth are valid causes for terminating a professional contract with a tenured teacher. Section 1122 of the Code, 24 P.S. §11-1122. In this case, the School Board and the Secretary found that Petitioner violated two provisions of the Code, to wit, Sections 1515(a) and 1516.1, 24 P.S. §§15-1515(a) and 15-1516.1.

Concerning the first provision which the School Board held that Petitioner has violated, the Petitioner

---

[5] Petitioner also challenges the Superintendent's authority to request an elementary school teacher to refrain from conducting religious activity in the classroom. We find this contention to be without merit. Obviously, the Superintendent of schools has a duty to make sure the schools and teachers within his control are not abridging the constitutional rights guaranteed to the students under his direction. He cannot tolerate illegal conduct in the schools under his supervision by condoning violations of the Public School Code.

testified that the Bible stories he read to his class paralleled the King James version of the Bible. Section 1515(a) of the Code provides that:

> Courses in the literature of the Bible and *other religious writings* may be introduced and studied as regular courses in the literature branch of education by all pupils in the *secondary* public schools. Such courses shall be *elective* only and not required of any student. (Emphasis added.)

It is quite apparent from the record in this case that Petitioner was teaching an *elementary* class, that his readings were *not* for the purpose of teaching the literary aspects of the Bible and that his purpose in reading was for his own spiritual edification and support which makes such reading a religious exercise. Clearly this conduct was a violation of Section 1515(a).

We have indicated already in this opinion wherein Petitioner violated Section 1516.1.

In this case, not only did Petitioner's activity go far beyond the allowed behavior of the school laws, of this state, but he acted persistently,[6] negligently,[7] and willfully in the face of many demands by the superintendent of schools to cease and desist from conducting religious activities in school. In fact, Petitioner went as far as expressing his intent to continue these ac-

---

[6] Persistent has been defined by the courts as a "series of individual incidents, or as one incident carried on for a substantial period of time." *Gobla*, 51 Pa. Commonwealth Ct. at 543, 414 A.2d at 774.

[7] In *Harris v. Commonwealth*, 29 Pa. Commonwealth Ct. 625, 372 A.2d 953 (1977), citing *Johnson v. United School District Joint School Board*, 201 Pa. Superior Ct. 375, 191 A.2d 897 (1963), the Commonwealth Court stated that a teacher's refusal and failure to obey her supervisor's directive was an act of negligence and would also be considered as a persistent and willful violation of the school laws.

tivities even though he was warned to do so would endanger his job.

Affirmed.

### ORDER

AND Now, this 15th day of March, 1982, the dismissal of Lloyd Fink as a professional employee of the Warren County School District is hereby affirmed.

Judge PALLADINO did not participate in the decision of this case.