544 A.2d 562

George Rhodes, Jr., Petitioner *v.* Laurel Highlands School District, Respondent.

Argued. March 24, 1988, before Judges MacPhail, Colins and McGinley, sitting as a panel of three.

*Oliver N. Hormell,* for petitioner.

*Gary J. Frankhouser,* for respondent.

Opinion by Judge MacPhail, July 22, 1988:

George Rhodes, Jr., a tenured school teacher, appeals here from an order of the Secretary of Education which affirmed his dismissal as a professional employee by the Laurel Highlands School District (District). We affirm.

Rhodes at all times pertinent to this case taught General Science I and General Science II in the Laurel Highlands Senior High School. In October, 1984, the Superintendent of Schools met with Rhodes to discuss complaints that Rhodes was imposing his religious views upon the students in his classroom. These complaints were received by the District's guidance department and administration. Rhodes did not deny the allegations and stated that "he was a Christian and that part of his mission was in a sense evangelistic." Notes of Testimony (N.T.) from September 29, 1986 at 88.

Two days later, the Superintendent sent Rhodes a letter summarizing the discussion which occurred at the

conference and warning him that the laws regarding the separation of church and state must be upheld, that he must cease and desist from the promotion of his personal religious views in the classroom and that if similar complaints were received in the future, appropriate action would be taken.

On September 19, 1985, a student who had apologized to Rhodes for disturbing his class, was required by Rhodes to pray with him in the hallway outside of the classroom as a condition of reentering the classroom. N.T. at 71. For that incident, Rhodes was suspended for four days. In the Superintendent's suspension letter, Rhodes was advised that his continued failure to heed warnings regarding the involvement of religion in the classroom could lead to his dismissal.

Notwithstanding the warnings, Rhodes in 1985 and 1986, according to testimony from some of his students, continued to discuss religion in his classroom. Rhodes once again was called into a conference with the Superintendent, and he again failed to deny any of the incidents which had been reported. N.T. at 91. When asked, *inter alia,* whether he could cease from imposing his religious views upon his students, Rhodes answered unequivocally "no." N.T. at 92. He was then suspended pending action by the District's Board (Board).

After a notice of charges and an amended notice of charges asserting that Rhodes had persistently and willfully violated the school laws or policies and had been persistently negligent in refusing to obey the administration's reasonable demand were served upon Rhodes, the Board held public hearings where various witnesses for and against Rhodes were heard. Rhodes was ably represented by counsel at all of the hearings. At the conclusion of the hearings, the Board filed its adjudication containing findings of fact and conclusions of law and based thereon, dismissed Rhodes as a professional employee.

Rhodes appealed to the Secretary of Education (Secretary) pursuant to the provisions of Section 1131 of the Public School Code of 1949 (Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §11-1131. Without receiving additional testimony, the Secretary handed down an opinion which adopted with some slight modification most of the Board's findings of fact and, after an extensive review of the record made at the hearings and a review of the law pertinent thereto, concluded that the evidence was sufficient to warrant Rhodes' dismissal.

In his appeal to this Court, Rhodes contends that he did not have a fair hearing before the Board in that he was denied procedural and substantive due process, and that the evidence was insufficient to sustain his dismissal.

### Procedural And Substantive Due Process

Rhodes complains that the District's refusal to answer interrogatories prevented him from ascertaining what the District's standards or guidelines were with respect to the discussion of religion in the classroom. Rhodes cites no case law which would hold that discovery proceedings are permitted or required in school board dismissal hearings. Further, while the record shows that the interrogatories were submitted to the Board, there was no motion for sanctions for failure to answer the interrogatories.

Hearings before local agencies are governed by the provisions of the Local Agency Law, 2 Pa. C. S. §§551-555 and the Code, specifically Sections 1126-1130, 24 P.S. §§24-1126—24-1130. There is no provision in either of those statutes for discovery and no provision requiring the application of the Rules of Civil Procedure to proceedings before a school board.

We hold that Rhodes was not denied procedural due process by reason of the Board's failure or refusal to answer Rhodes' interrogatories.

Rhodes next contends that since he had "no idea what is prohibited in the classroom with respect to the teaching of 'religion' because the school board has failed to set forth a standard which is precise, specific and not vague" (Rhodes' brief at page 13), his First Amendment right to freedom of speech was unconstitutionally impaired.

We have previously set forth in some detail the conferences and correspondence between the administration and Rhodes regarding specific objections to Rhodes' teaching methods which regarded religion. For him now to say that he did not understand what was prohibited by the District is difficult for us to comprehend. We reject this argument as being without merit.

Rhodes argues that since he was not clearly informed as to what was being proscribed, his references to religion in the classroom were innocent. He contends that to view them otherwise interferes with his right to discuss relevant religious material in the classroom and thus deprives him of substantive due process. This Court recognizes and has recognized in the past that the Code itself provides for courses relating to religion, Section 1515 of the Code, 24 P.S. §15-1515 added by Section 1 of the Act of December 22, 1965, P.L. 1144, and that discussions *about* religion, where relevant to classroom course material, are permissible. *See Fink v. Board of Education of the Warren County School District*, 65 Pa. Commonwealth Ct. 320, 442 A.2d 837 (1982), *appeal dismissed*, 460 U.S. 1048 (1983).

Where, however, a teacher indicates his preference for a particular type of religion and seeks to promote that religion or *any* religion among his students, the teacher's constitutional right to freedom of religion and speech must give way to our country's historic Establishment Clause, also set forth in the First Amendment. *Fink*.

Here, the Board and Secretary found from the evidence that Rhodes' repeated references in the classroom to Christianity, God, the devil and demons, exceeded the constitutional boundaries within which discourse about religion is permissible. As we have noted, Rhodes said, two years before his dismissal, that he was a Christian and that part of his mission was evangelistic. While no one would criticize or condemn him for his personal religious beliefs, when Rhodes as a teacher in the classroom, by words or actions, promotes religion—*any* religion—he violates the Establishment Clause. *Abington School District v. Schempp,* 374 U.S. 203 (1963).

We conclude that Rhodes has not been denied procedural or substantive due process in the proceedings which led to his termination.

## SUFFICIENCY OF THE EVIDENCE

Rhodes again raises the question of what law or policy he violated. Again we refer to the warnings, the suspension and the Superintendent's suspension letter which preceded the 1986 proceedings against him. We are well satisfied that a person of reasonable intelligence would know from those communications precisely what was forbidden.

Rhodes next protests that he was not *persistently* negligent in obeying the District's reasonable demands. He refers to one letter but conveniently overlooks the various conferences which were held to advise him of his wrongdoing and the Superintendent's admonition to him to cease and desist. He also professes not to know what is meant by "religious beliefs." We believe that a school teacher with twenty-five years of service is, or should be, well aware of what a religious belief is.

Rhodes' final challenge is that the evidence presented by the students who testified against him was not clear, concise and convincing, and that their testimony

was not credible. It is our duty, of course, to determine whether findings of fact are supported by substantial evidence. *Ward v. Board of Education of the School District of Philadelphia,* 91 Pa. Commonwealth Ct. 332, 496 A.2d 1352 (1985). Credibility of the witnesses is for the factfinder. Here, both the Board and the Secretary accepted as truthful the testimony of the students who testified against Rhodes.

Perhaps most damaging of all that testimony was that which indicated that Rhodes, during class, would put on the blackboard the word "truth" with an arrow pointed towards "G _ _" and an arrow from "G _ _" to "truth." He would then ask the class to recite the letters which would complete the "G _ _" and to recite the word "God" after Rhodes would say the word "truth." He then would tell the class, "God is truth and truth is God." N.T. at 30, 192.

In light of that testimony, we need not review in detail the other testimony which indicated numerous references in the classroom to demons, devils, prophecies from the Book of Relevations and hell. None of those references were pertinent to classroom materials used for instruction in General Science I and II.

We are well satisfied that there is substantial evidence to support the findings of fact made by the Board and the Secretary.

While Rhodes makes a valiant effort to distinguish *Fink* from the case now before us and while there are major factual distinctions between what Mr. Fink did and what Rhodes did, the underlying principles upon which we relied in *Fink* are equally applicable to the instant case.

In *Fink*, we said:

[A teacher's] constitutional right to religious freedom must be balanced with the constitutional separation of church and state and where

those two constitutional mandates are in conflict, . . . the latter must prevail. . . . [T]he concept of academic freedom is a species of the right to freedom of speech and the teacher's right must yield to compelling public interest of greater constitutional significance. . . . [F]ree speech does not grant teachers the absolute right to say or write whatever they please in a classroom.

65 Pa. Commonwealth Ct. at 330, 442 A.2d at 842.

We find that there is substantial evidence to support the District's charges against Rhodes.

### CONCLUSION

Finding that there is substantial evidence to support the findings of fact made by the Board and adopted with slight modification by the Secretary, that there are no errors of law and that the constitutional violations asserted by Rhodes are without merit, we affirm the Secretary's order upholding his dismissal.

### ORDER

The order of the Secretary of Education in the above-captioned matter is affirmed.