IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hugo Prieto,                                    :
            Petitioner                          :
                                                :      No. 144 C.D. 2021
            v.                                  :
                                                :      Argued: November 15, 2022
The School District of Philadelphia            :
(Department of Education),                      :
            Respondent                          :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                             FILED: December 28, 2022


            Hugo Prieto (Prieto) petitions for review of the January 29, 2021 order of
the Acting Secretary of Education Noe Ortega[1] (Acting Secretary) that affirmed a
decision of the Board of Education (Board) of the School District of Philadelphia
(District) dismissing him from his position as a tenured professional employee. The
Acting Secretary affirmed Prieto's dismissal for two reasons. First, the Acting
Secretary concluded that Prieto received due process because the District complied
with the procedures required by the Public School Code of 1949 (School Code).[2]

---

[1] Acting Secretary Ortega resigned from office effective April 29, 2022. Governor Wolf
named Eric Hagarty as Acting Secretary to replace Mr. Ortega. To date, Mr. Hagarty remains
Pennsylvania's Acting Secretary of Education.

[2] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-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.

Second, the Acting Secretary concluded that the District met its burden of showing a valid cause to terminate Prieto. Upon review, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

This case stems from an incident that occurred on December 7, 2018, between Prieto and a student. (Acting Secretary's Op., Findings of Fact (FOF) ¶ 5.) There is no dispute that at that time Prieto was a tenured professional employee of the District and was employed as a chemistry teacher for the 2018-2019 academic school year. During a "hall sweep," three students entered Prieto's classroom at the start of class, sat in the back of the room talking to friends, and refused to leave when Prieto directed them. (FOF ¶ 5.) Prieto called the District's main office and used a walkie-talkie to seek assistance. (FOF ¶ ¶ 6-7.) Assistant Principal Albert Sniezevage (Sniezevage) responded to Prieto's walkie-talkie call and entered the classroom, had Prieto identify the students in question, and proceeded to usher the students out of the classroom. (FOF ¶ 8; Hr'g Tr. at 8, Reproduced Record (R.R.) at 23a.)

Sniezevage testified as follows. Prieto picked up a hardbound chemistry textbook from the floor and threw it at one of the students who was exiting the room, hitting the student in the lower back near the waistline. (Hr'g Tr. at 11, R.R. at 24a.) The student shouted an expletive at Prieto and became agitated. (Hr'g Tr. at 13, R.R. at 24a.) Sniezevage stepped between Prieto and the student and told Prieto to leave the classroom. (Hr'g Tr. at 13, R.R. at 24a.) Sniezevage attempted to restrain the student but the student evaded Sniezevage and confronted Prieto who put his hands up and began to exchange punches with the student. (Hr'g Tr. at 13, R.R. at 24a.) Sniezevage again stepped between Prieto and the student and ordered Prieto to leave the room. (Hr'g Tr. at 13-14, R.R. at 24a-25a.) Prieto slowly walked to the door and while doing so, the student broke free, and again confronted Prieto. (Hr'g Tr. at 14, R.R. at 25a.) Prieto offensively fought the student again. (Hr'g Tr. at 14-15, R.R. at 25a.) A cell

phone video recorded part of the fight between Prieto and the student. (FOF ¶¶ 19-20; Hr'g Tr. at 25, R.R. at 27a.) Thereafter, Sniezevage and another student were able to step between Prieto and the student, and Sniezevage ordered Prieto to leave the room; Prieto, in response, stepped into the storage room at the front of the classroom. (Hr'g Tr. at 32, R.R. at 29a.)

After the fight ended, School Principal Lillian Izzard entered the room and escorted the student to her office to be questioned by school police. (Hr'g Tr. at 16, R.R. at 25a.) That same day, Sniezevage memorialized the incident in a written statement and prepared a Form 204 Unsatisfactory Incident report. (FOF ¶ 26; Hr'g Tr. at 118-20, R.R. at 26a, 54a-58a.) School safety officers interviewed Prieto the day of the incident. (Hr'g Tr. at 33, R.R. at 29a.) As of December 10, 2018, Prieto was removed from his classroom and reassigned to the District's main building. (R.R. at 65a.) As of December 11, 2018, Prieto was reassigned to the Education Center and, while at the Education Center, he was not given any work. (R.R. at 67a.) On January 3, 2019, Sniezevage held an investigatory conference to discuss the incident. (R.R. at 62a-63a.) On April 15, 2019, Prieto again met with Sniezevage at a second-level conference. (Hr'g Tr. at 33, R.R. at 29a.)

On April 25, 2019, the District's Board approved a resolution finding that there was sufficient evidence to issue a Statement of Charges and recommend disciplinary action be taken against Prieto. (R.R. at 52a.) On May 6, 2019, the Board provided Prieto with a written notice that included a statement of charges, informed Prieto of his right to a hearing, and scheduled a hearing before the Board on May 15, 2019 at 10:00 a.m. (R.R. at 16a-18a.) The May 6, 2019 statement of charges indicated that Prieto was suspended on the grounds of intemperance, incompetency, and cruelty under section 1122 of the School Code. 24 P.S. § 11-1122; R.R. at 17a. On May 16, 2019, Prieto's counsel, Richard W. Migliore, Esq., emailed the District to reschedule

3

the hearing, which request the District granted and indicated it would send prospective hearing dates. (R.R. at 74a-75a.)

The Board hearing was held on August 25, 2020, and Prieto appeared with counsel by Zoom. (FOF ¶ 34.) Both counsel for Prieto and the District had full opportunity to call and question witnesses, cross-examine the other party's witnesses, introduce evidence, and object to evidence offered by the opposing party. (FOF ¶ 35.) Both parties submitted briefs following the hearing. The hearing officer issued findings of fact and conclusions of law on October 14, 2020, recommending that the Board terminate Prieto's employment. (FOF ¶¶ 36-37.) On October 22, 2020, the District's Board adopted a resolution terminating Prieto's employment. (FOF ¶ 38.)

Thereafter, Prieto appealed to the Acting Secretary. A hearing was held virtually before hearing officer Robert Tomaine on December 10, 2020. (R.R. at 123a-152a.) On January 29, 2021, the Acting Secretary issued a decision and order affirming the District's dismissal of Prieto. (R.R. at 162a.)

Subsequently, Prieto appealed to this Court.

## II. ISSUES

Before this Court,[3] Prieto presents four issues for review.[4] First, Prieto argues the Acting Secretary erred in finding that his actions on December 7, 2018, constituted intemperance, thereby justifying his dismissal under the School Code.

---

[3] Our review of the Acting Secretary's order is limited to determining whether an error of law was committed, constitutional rights were violated, or necessary findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *McCoy v. Lincoln Intermediate Unit No. 12*, 391 A.2d 1119, 1121 (Pa. Cmwlth. 1978). An administrative decision is supported by substantial evidence "when a reasonable man, acting reasonably, would have reached the same decision." *Central York School District v. Ehrhart*, 387 A.2d 1006, 1008 (Pa. Cmwlth. 1978).

[4] We have reordered and paraphrased the questions presented for clarity and ease of discussion.

4

Prieto also argues the Board violated his due process rights as the District did not follow the School Code's requirements for termination. He further contends he was effectively terminated without a hearing and that suspensions without pay pending termination are not permitted under the School Code.

## III. DISCUSSION

### A. Prieto's Intemperance

Prieto first argues that the Acting Secretary erred in finding that his conduct constituted intemperance under the School Code. Prieto argues "[i]n a 'reflex action' [he] 'grabbed the book and tapped the student in the back of his leg.'" (Prieto's Br. at 10.) In doing so, Prieto has attempted to reargue facts relating to his perspective of the incident and "the actual [t]ruth of the [m]atter." (Prieto's Br. at 12-13.) In essence, Prieto is requesting this Court to reweigh the evidence, make different findings, and make credibility determinations based upon his version of the incident. (Prieto's Br. at 12-13, 18-19, 40-46.)

Section 1122 of the School Code provides:

> The **only valid causes for termination** of a contract heretofore or hereafter entered into with a professional employe shall be immorality; incompetency; unsatisfactory teaching performance based on two (2) consecutive ratings of the employe's teaching performance that are to include classroom observations, not less than four (4) months apart, in which the employe's teaching performance is rated as unsatisfactory; intemperance; cruelty; persistent negligence in the performance of duties; wilful neglect of duties ... persistent and wilful violation of or failure to comply with school laws of this Commonwealth, including official directives and established policy of the board of directors; on the part of the professional employe ....

24 P.S. § 11-1122 (emphasis added). It is the District's burden to prove that a professional employee committed one or more of the statutorily enumerated acts.

*Foderaro v. School District of Philadelphia*, 531 A.2d 570, 571 (Pa. Cmwlth. 1987). Here, the District charged Prieto with incompetency, intemperance, and cruelty, which are expressly provided for in section 1122 of the School Code. (R.R. at 82a.) The Acting Secretary concluded that the District had met its burden of proof because there was sufficient support in the record for the allegation that "[Prieto's] actions constitute[d] intemperance justifying his termination under the School Code." (Acting Secretary's Opinion at 9; R.R. at 161a.)

Notably, intemperance is not defined in the School Code. Nevertheless, this Court has explained that intemperance is a loss of self-control, which may be inferred from the use of excessive force. *McFerren v. Farrell Area School District*, 993 A.2d 344 (Pa. Cmwlth. 2010); *Belasco v. Board of Public Education of School District of Pittsburgh*, 510 A.2d 337 (Pa. 1986). Upon review of the record and the Acting Secretary's findings, we agree that there was ample evidence to the support the conclusion that Prieto's conduct exhibited a loss of self-control or excessive use of force.

It is undisputed that on December 7, 2018, Prieto engaged in two fist fights with a student. The Acting Secretary additionally found that Prieto threw a textbook at the student as the student was leaving the classroom. In the Acting Secretary's words:

> [Prieto] testified that the book hit the student on the calf rather than on his back. He also testified that he did not throw the book at the student, but rather that the student kicked the book as [Prieto] was reaching for it, causing the book to hit [Prieto's] toe. [Prieto] testified: 'I opened my arms and I tapped him as a reflex action on the calf . . . with the flat part of the book.' [Prieto's] version of events was directly contradicted by Assistant Principal Sniezevage's testimony. Sniezevage testified that he witnessed [Prieto] intentionally throw a book at and exchange punches with a student. **I find the testimony of Sniezevage to be credible. I do not find [Prieto's] testimony to be credible. I find credible**

6

**that [Prieto] intentionally threw a book at a student and participated in a fistfight in his classroom on the day in question.**

(R.R. at 161a.) (internal citations omitted) (emphasis added). The Acting Secretary is the ultimate factfinder when he makes findings of fact. *Balog v. McKeesport Area School District*, 484 A.2d 198, 200 (Pa. Cmwlth. 1984). As the ultimate factfinder, the Acting Secretary renders credibility determinations of the witnesses' testimony. *Rhodes v. Laurel Highlands School District*, 544 A.2d 562, 565 (Pa. Cmwlth. 1988). Although Prieto continues to reargue the facts surrounding the December 7, 2018 incident, this is of no moment as the Acting Secretary did not find his testimony credible. As stated by the Acting Secretary, he reviewed the testimony of Sniezevage and determined that Sniezevage's testimony was credible. (Acting Secretary's Opinion at 9; R.R. at 161a.) The Acting Secretary accepted Sniezevage's testimony that Prieto threw the textbook at the student and engaged in two fist fights with the student. (FOF ¶¶ 9-18, 21; Hr'g Tr. at 11, R.R. at 24a.)

> The record supports the Acting Secretary's findings. Sniezevage testified:
>
> As the students were leaving, I observed Mr. Prieto pick up the chemistry book and throw it at a student as the student was leaving the room.
>
> Q: He threw it at one of the exiting students?
>
> A: Yes.
>
> Q: And you say he threw it at the student. Did the book hit the student?
>
> A: Yes, it did. It struck him in the lower back, right around the waistline, like lower back right above his buttocks.
>
> Q: And you say a chemistry book, are we talking just a typical text or hardbound textbook or –

7

A: We are talking about your 500-plus page hardback chemistry textbook.

(Hr'g Tr. at 11, R.R. at 24a.) Sniezevage further testified that as the student became agitated, he instructed Prieto to leave the room, which Prieto did not. (Hr'g Tr. at 12-13, R.R. at 24a). Sniezevage stated the student got around him and started exchanging punches with Prieto. (Hr'g Tr. at 13, R.R. at 24a.) Sniezevage testified that he stepped between the student and Prieto and again ordered Prieto to leave the room, but "[Prieto] again did not move with any urgency." (Hr'g Tr. at 13-14, R.R. at 24a-25a.) Sniezevage stated that "[m]aybe to my recollection it was the third or fourth time where I told him to leave the classroom that he began to move towards one of the exits." (Hr'g Tr. at 14, R.R. at 25a.) Sniezevage noted: "Again, the student got free, and Mr. Prieto was still in the classroom, and they went for a second round of punch exchange, which took place at the front of the classroom." (Hr'g Tr. at 14, R.R. at 25a.) Because the Acting Secretary's findings of fact are supported by substantial evidence, we must accept those findings on appeal. *Balog*, 484 A.2d at 200.

Upon review of the Acting Secretary's findings, which are supported by substantial evidence in the record, the Acting Secretary appropriately concluded that Prieto's conduct demonstrated a lack of self-control, and, therefore, constituted intemperance. Thus, the District met its burden of showing valid cause to terminate Prieto from his employment pursuant to section 1122 of the School Code.

### B. Prieto's Procedural Arguments

Next, Prieto argues the Board did not follow the School Code's termination procedures, and thus, violated his due process rights. (Prieto's Br. at 3, 17-19.) Although we have determined the Board met its burden proving intemperance, that ruling does not and cannot negate the District's obligation to provide Prieto with

the due process protection to which he is entitled.  Therefore, we address Prieto's due process issues in turn.

### 1. Procedure for Termination

First, Prieto cites *Vladimirsky v. School District of Philadelphia*, 144 A.3d 986 (Pa. Cmwlth. 2016), and *School District of Philadelphia v. Jones*, 139 A.3d 358 (Pa. Cmwlth. 2016), to support his assertion that "[t]he District's administrative staff suspended [his] pay and effectively terminated his employment as of the date of May 6, 2019, without the mandatory prior school hearing" required by the School Code. (Prieto's Br. at 20.)

Section 1127 of the School Code provides the following procedure for termination of a professional employee:

> Before any professional employe having attained a status of permanent tenure is dismissed by the board of school directors, such board of school directors shall furnish such professional employe with a detailed written statement of the charges upon which his or her proposed dismissal is based and shall conduct a hearing.  A written notice signed by the president and attested by the secretary of the board of school directors shall be forwarded by registered mail to the professional employe setting forth the time and place when where such professional employe will be given an opportunity to be heard either in person or by counsel, or both, before the board of school directors and setting forth a detailed statement of the charges.  Such hearing shall not be sooner than ten (10) days nor later than fifteen (15) days after such written notice.  At such hearing all testimony offered, including that of complainants and their witnesses, as well as that of the accused professional employe and his or her witnesses, shall be recorded by a competent disinterested public stenographer whose services shall be furnished by the school district at its expense.  **Any such hearing may be postponed, continued or adjourned.**

9

24 P.S. §11-1127 (emphasis added). This Court has interpreted the above section as "requir[ing] the [school b]oard to resolve to demote the employee and to furnish him with a written statement of the charges prior to the hearing." *Patchel v. Wilkinsburg School District*, 400 A.2d 299, 232 (Pa. Cmwlth. 1979). As we further noted in *Patchel*, the school board only needs to pass a resolution that it has sufficient evidence to support its belief to demote the professional employee, and then, direct the secretary and president of the school board to notify the professional employee of this fact and advise him of his right to a hearing. 400 A.2d at 232 (quoting *Abington School District v. Pittenger*, 305 A.2d 382, 387 (Pa. Cmwlth. 1973)).

In the instant case, Prieto's reliance on *Vladimirsky* and *Jones* is misplaced. In *Vladimirsky*, this Court reversed the termination of a tenured employee because the letter terminating his employment sent by the school district was not authorized by the School Reform Commission (SRC) but rather was sent by the school district administrator, which violated section 1127 of the School Code. Specifically, the letter in *Vladimirsky* stated: "This is to advise you that we shall recommend to the [SRC] that **your employment with [the school district] be terminated effective immediately**." *Id.* at 992 (emphasis added). Subsequent to receiving the letter, the employee had a hearing before the SRC, and then later the SRC passed a resolution formally terminating the teacher. We held the school district's termination was procedurally defective. We determined the school district erred because: (1) an administrator sent the teacher a letter recommending that he be terminated effective immediately; (2) the statement of charges was not issued as the result of the passage of a resolution by the SRC; (3) and the SRC did not vote by roll call to determine whether the charges had been sustained. *Id.* at 994-995.

Similarly, in *Jones*, this Court reversed the termination of a tenured employee because the school district failed to follow the procedural requirements for termination found in the School Code. Additionally, the employee received a letter

10

stating his "employment with [t]he [school district would] be terminated effective immediately" and his pay was stopped as of that date of the letter. *Jones*, 139 A.3d at 367. This Court in *Jones* faulted the school district for (1) having an administrator and the SRC chairman send the employee a letter recommending that he be terminated; (2) issuing a statement of charges but not as the result of the passage of a resolution by the SRC; and (3) approving a resolution in December 2010 terminating the employee retroactively to August 2009. *Id.* at 368.

Here, unlike *Vladimirsky* and *Jones*, the District complied with the mandates provided in section 1127 of the School Code as the Board initiated the termination rather than its administrative staff. On April 25, 2019, the Board passed the following resolution:

> RESOLVED, that there is sufficient evidence to support the recommendation of the Superintendent and/or his designee to terminate the employment, from the [District], of the following professional employee:
> 1. [Prieto]
> and be it,
> FURTHER RESOLVED, that the [s]ecretary and [Board] [p]resident are directed to advise these professional employees of the action item and their right to a hearing.

(R.R. at 104a.) Prieto's notice and statement of charges were dated May 6, 2019, which is clearly after the resolution. (R.R. at 16a-18a.) The Board's meeting minutes further support that the resolution was not Prieto's termination, but instead, the Board's *approval of the administration's recommended termination of Prieto*. (R.R. at 90a.) Moreover, in the meeting minutes, a breakdown of the 9-0 vote indicates how each Board Member voted in favor of the resolution. (R.R. at 90a.) The resolution for the approval of Prieto's recommended termination is also distinguishable from any other action item at the same Board meeting as "Administration's Recommended Termination of Professional Employee." (R.R. at 89a-90a.)

11

As required, the statement of charges set a date for a timely hearing to determine whether Prieto should be terminated.[5] (R.R. at 84a.) Moreover, the statement also specifically included, "**This is not a final determination on the status of your employment**….**You remain suspended without pay, but with health benefits, pending a final decision on the School District recommendation of dismissal**." (R.R. at 83a-84a) (emphasis added). The letter Prieto received cannot be construed as terminating his employment effective immediately as Prieto remained suspended from May 2019 until his hearing in August 2020. Unlike the tenured employees in *Vladimirsky* and *Jones*, Prieto was not terminated effective immediately and was instead suspended pending a final decision on the recommendation for his dismissal.

Furthermore, Prieto was not terminated by Board resolution until October 22, 2020, by a 6-0 vote. (R.R. at 120a.) Significantly, Prieto's termination date was effective immediately on October 22, 2020 – not the date of the Board's resolution that there was sufficient evidence to support Prieto's termination in April 2019. *Id.* Moreover, Prieto was terminated ***after*** his hearing before the Board's hearing officer on August 25, 2020. (R.R. at 22a-50a.) The hearing officer issued findings of fact and conclusions of law on October 14, 2020, recommending that the Board terminate Prieto's employment. (R.R. at 163a-188a.) The October 22, 2020, resolution to terminate Prieto specifically states:

> RESOLVED, that … PRIETO be dismissed from his employment as a professional employee by the [District], effective immediately, and be it
> FURTHER RESOLVED, that the Hearing Officer's Findings of Fact and Conclusions of Law are adopted as the reasons for this decision,

---

[5] The record shows that the hearing before the Board was scheduled on August 25, 2020, after a "mutually agreed upon postponement." (R.R. at 163a.) However, we note, Prieto has not argued that he suffered prejudice or harm to his interests from the delay in the hearing.

12

and be it

FURTHER RESOLVED, that this decision was made in accordance with the [School Code], as amended, following an independent review of the record by the individual members of the [Board].

(R.R. at 117a.) Because Prieto's termination was not backdated and occurred after his Board hearing, the District complied with the procedural requirements of section 1127 of the School Code.

Therefore, we find the Acting Secretary did not err in upholding Prieto's dismissal.

## 2. Dismissal Without a Hearing

Next, Prieto argues that he was effectively dismissed on May 9, 2019, the date of his suspension, without a hearing, which is an "illegal act." (Prieto's Br. at 27.) We must note, however, that Prieto was not terminated on May 9, 2019, but rather was suspended on that date. Therefore, we review this issue as to whether Prieto was entitled to a hearing before his suspension.

It is well settled that suspension for cause without a hearing is permissible where the teacher's conduct is potentially harmful to the safety of the children or the teacher is unable to maintain order in the classroom creating a possibility for harm. *Kaplan v. Philadelphia School District*, 130 A.2d 672 (Pa. 1957); *Board of Education of School District of Philadelphia v. Kushner*, 530 A.2d 541 (Pa. Cmwlth. 1987); *Board of School Directors of the Eastern York School District v. Fasnacht*, 441 A.2d 481 (Pa. Cmwlth. 1982).

Here, Prieto lost control when he threw a book at a student and used physical force on a student. Prieto's actions presented a very real harm to the children. This alone justifies his pre-hearing suspension. Prieto's use of physical force on a student would have allowed the District to suspend him without any hearing or

investigatory conference. However, the District held an investigatory conference on January 3, 2019, and a second-level conference on April 15, 2019, both of which were opportunities for the District to investigate the facts and for Prieto to hear the allegations against him and respond. Importantly, Prieto was not suspended until the conclusion of both conferences on May 9, 2019, by Board action. Nevertheless, in this case, no pre-hearing was required for Prieto's suspension due to his intemperate conduct.

Accordingly, we hold the Acting Secretary did not err in concluding the District complied with the School Code.

### 3. Suspensions Without Pay

Lastly, Prieto argues that his pay could not be constitutionally stopped until after the termination hearing. Prieto asserts that a suspension without pay pending dismissal is effectively a termination and a violation of *Vladimirsky* and *Jones*. (Prieto's Br. at 24, 31-34.) Prieto contends that his suspension without pay amounts to a termination and is an effort to "circumvent the procedural safeguards of the School Code." (Prieto's Br. at 24.)

Pennsylvania courts have long permitted suspensions pending dismissal for public employees, including teachers. *See Burger v. Board of School Directors of McGuffey School District*, 839 A.2d 1005 (Pa. 2003) (upholding suspension without pay of school district superintendent in instance of serious charges of misconduct); *Kaplan*, 130 A.2d at 676 (permitting suspension without pay for a teacher pending dismissal); *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 592 A.2d 779, 783 (Pa. Cmwlth. 1991) (holding that a suspension without pay is not a *de facto* termination). In *Kaplan*, the Supreme Court stated that to "allow compensation to a teacher who deliberately breaks the moral law which makes him unfit to teach[] would

14

result in an absurd and unreasonable interpretation of the act." 130 A.2d at 680 (internal citations omitted).

Here, Prieto was **not terminated effective immediately** as the employees in *Vladimirsky* and *Jones* were. Instead, Prieto was suspended by Board resolution which indicated the Board had sufficient evidence to substantiate the charges against Prieto. Prieto was suspended without pay but with health benefits pending his termination proceedings. The Acting Secretary concluded that "[b]ecause [Prieto's] conduct was potentially harmful to the safety of children, the District had the right to suspend [Prieto] without pay pending a final decision on the recommendation to terminate his employment." (Acting Secretary's Op. at 7, R.R. at 159a.)

In *Kaplan*, the Supreme Court stated:

> *The welfare of the children is the paramount consideration.* It follows from the fact that the authorities are not required to give active employment to a teacher pending his removal hearing, that, when his removal is subsequently ordered, he is not entitled to receive salary for the period during which he has not taught.

*Kaplan*, 130 A.2d at 676 (quoting *Gentner v. Board of Education of Los Angeles*, 25 P.2d 824, 825 (Cal. 1933)) (emphasis in original).

Prieto was accused of serious misconduct stemming from the December 7, 2018 incident. After investigating the incident, the Board determined it had sufficient evidence to resolve to terminate Prieto. Pending the disposition of his termination proceedings, the Board suspended Prieto without pay but with health benefits. Prieto's suspension was a disciplinary action taken by the Board to keep the District's children safe and was within the constraints of due process.

Therefore, we find the Acting Secretary did not err in finding the District did not violate Prieto's due process rights by suspending him without pay as his intemperance was potentially harmful to the safety of children.

15

## IV. CONCLUSION

For the foregoing reasons, we find the Acting Secretary's determination to be based on substantial evidence that supports the necessary factual findings. Because we do not detect any error of law or constitutional violation in the District's termination proceedings, we affirm the Acting Secretary's January 29, 2021 Order.

_____

PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hugo Prieto,                   :
         Petitioner         :
                      :      No. 144 C.D. 2021
       v.               :
                      :
The School District of Philadelphia  :
(Department of Education),       :
         Respondent    :

## *ORDER*

AND NOW, this 28th day of December, 2022, the January 29, 2021 Order of the Department of Education is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge