IN THE COMMONWEALTH COURT OF PENNSYLVANIA

School District of Philadelphia, :
                Petitioner :
                 :
                 :
      v. :
                 :
Sonarith Chek, : No. 1266 C.D. 2019
             Respondent : Submitted: June 12, 2020

BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED: July 7, 2020

      The School District of Philadelphia (District) petitions for review from the August 15, 2019 order of the Secretary of Education (Secretary) that reversed its decision to dismiss Sonarith Chek (Chek), a tenured professional employee, and ordered Chek's reinstatement. The Secretary reversed Chek's dismissal for two reasons. First, the Secretary concluded that Chek did not receive due process because the District failed to comply with the procedures required by the Public School Code of 1949 (School Code).[1] Second, the Secretary concluded that the District did not meet its burden of showing a valid cause to terminate Chek. Upon review, we affirm.

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-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.

On or about September 1, 1994, the District hired Chek as a professional employee and during his last year of employment, the 2017-2018 school year, Chek was assigned to the Penn Treaty School as a social studies teacher. Secretary of Education, Opinion and Order dated 8/15/19, Findings of Fact (F.F.) 1 & 3. Principal Sam Howell (Principal Howell) supervised Chek while he was at Penn Treaty School and often spoke with Chek about classroom management and other concerns. F.F. 5; Notes of Testimony (N.T.) 21, 49.

In 2017, Principal Howell initiated an investigation into two incidents giving rise to the current dispute. The first incident occurred on October 2, 2017 when a student in Chek's classroom climbed out of the window and on to the top of the gymnasium roof, which was adjacent to the windowsill of the classroom window. F.F. 6-7. At the time, Chek was in the classroom taking roll and could not see the window. F.F. 8. The other students in the room reported to Chek that the student in question was trying to climb out the window. F.F. 9. Chek told the student to come back into the room and sit down and the student complied with his request. F.F. 10-11. At the time of the incident, Chek was aware that the screws and grate on the window had been loosened, which enabled the student to climb out of the window. F.F. 16. Before this incident, Chek verbally reported to the custodian that the window needed repair. F.F. 16-17. The custodian told Chek to report that the grate had been loosened to the building engineer but Chek failed to do so. F.F. 17-18. When Principal Howell investigated this incident, he discovered that the screws had been loosened and the window was subsequently repaired so that students could no longer climb out of the window. F.F. 15, 20.

The second incident occurred on October 13, 2017, and involved a physical altercation with a student. F.F. 21, 24-30. While Chek was teaching, a

2

student was tossing a paper plane around a classroom and refused to sit down with his classmates. F.F. 21-22. Chek took the paper plane away, crunched it, and threw it in the trash. F.F. 23. In response, the student "punched" Chek in the stomach and sat at Chek's computer. F.F. 24-25. Chek told the student to get away from the computer and pulled the student up by the book bag. F.F. 26-27. At that point, the student punched Chek a second time and knocked over a fan. F.F. 28. Chek tried to grab the student's book bag as Chek held the door open and, apparently not expecting the door to be open, the student ran out the door and fell on the floor. F.F. 29-30. The student reported that Chek pushed him out of the classroom and onto the floor. F.F. 31. Chek "did not admit to pushing the student out of the door" but admitted to closing the door after the student ran out of the classroom. F.F. 32-33. Chek did not leave the classroom to see if the student was injured, nor did he call security. F.F. 34.

Principal Howell investigated the second incident and, as part of that investigation, obtained 12 witness statements, which included 10 statements from students, 1 statement from the speech pathologist for the school, and 1 statement from Chek. F.F. 35-39. Based on the information gathered, the District concluded that Chek pushed the student out of the classroom and onto the floor. F.F. 40. The incident was reported to the Pennsylvania Department of Human Services, which subsequently investigated and "concluded that the incident was unfounded." F.F. 43, 51.

On October 16, 2017, Chek was reassigned to the Education Center pending an investigation and, while at the Education Center, he was not given any work. F.F. 44-45. Two days later, on October 18, 2017, Principal Howell held an

3

investigatory conference to discuss both incidents.[2]  F.F. 48.  On November 15, 2017, Principal Howell wrote an unsatisfactory incident report in which he recommended that Chek be terminated and that the unsatisfactory incident report and all related attachments be included in his personnel file.  F.F. 50.  On December 5, 2017, Chek met with Principal Howell at a second disciplinary conference.  F.F. 52.  Following this conference, Principal Howell did not amend his recommendation for disciplinary action but forwarded his findings for a second level review.  F.F. 53.  On March 28, 2018, Chek attended a second level conference with the District where Chek agreed that "it was improper to physically touch a student in any way."  F.F. 54-55.

On June 21, 2018, the School Reform Commission (SRC)[3] at a public meeting resolved that there existed evidence to support the recommendation of the Superintendent to terminate the employment of Chek.  F.F. 56.  On August 3, 2018, the School Board of Philadelphia (Board) provided Chek with a written notice that included a statement of charges, informed Chek of his right to a hearing, and scheduled a hearing before the SRC.  F.F. 62; Reproduced Record (R.R.) at 100a-02a.  On August 8, 2018, Chek elected a hearing before the Board.  F.F. 69.

While the charges were pending and prior to Chek's hearing, the District, by notice dated August 21, 2018, suspended Chek without pay effective August 20, 2018.  F.F. 72.  The August 20, 2018 notice indicated that Chek was

---

[2] Chek and his union representative participated in this conference with Principal Howell. Reproduced Record at 101a.

[3] The SRC is an instrumentality of the school district with the authority to exercise the powers of the local school board. *Vladimirsky v. Sch. Dist. of Phila.*, 144 A.3d 986, 989 n.2 (Pa. Cmwlth. 2016).  At some point during these proceedings, the SRC was dissolved pursuant to law and the governance returned to the School Board of Philadelphia.  F.F. 60.

suspended "on the grounds of persistent and willful violation of or failure to comply with the school laws of the Commonwealth, including official directives and established policy of the Board of Directors." F.F. 73.[4]

On October 30, 2018, Chek's hearing was held before the Board's appointed hearing officer. F.F. 75. At the hearing, the District presented the testimony of a District administrator and the speech language pathologist. F.F. 76. Chek appeared and testified on his own behalf. F.F. 77. Several months later, on January 10, 2019, the Board's appointed hearing officer recommended that Chek be dismissed, effective immediately, for the reasons set forth in his findings of fact and conclusions of law submitted with his recommendation. F.F. 78. With his proposed recommendation, the hearing officer provided a proposed adjudication for the Board that included a resolution to dismiss Chek from employment with the District. F.F. 79. A week later, on January 17, 2019, the Board, at a public meeting, voted to dismiss Chek from his employment by two-thirds vote and, in doing so, adopted the resolution proposed by the hearing officer. F.F. 80-82; R.R. 37a, 152a. Chek appealed the Board's decision to the Secretary.

On August 15, 2019, the Secretary reversed the decision of the Board to terminate Chek and ordered the Board to reinstate his employment with the District. Secretary's Order dated 8/15/19. The Secretary gave two reasons for his decision. First, the Secretary concluded that Chek was dismissed in violation of the "strict procedure outlined in the . . . School Code" and, therefore, Chek was denied "due process of law." Secretary's Opinion at 13. Second, the Secretary concluded that the Board erred when it terminated him for cause pursuant to the School Code

---

[4] On September 7, 2018, the Department of Labor and Industry held that Chek was not ineligible for unemployment compensation benefits in that his work-related conduct did not rise to the level of willful misconduct. F.F. 74.

because the evidence shows that Chek did not "persistently and willfully violate the school laws of the Commonwealth by violating the District's policy against physically aggressive behavior by teachers toward students." *Id*. at 16. The District petitioned this Court for review.[5]

Before this Court, the District asserts that the Secretary erred when he concluded that the District did not have cause under the School Code to terminate Chek's employment. District's Brief at 12. The District states that the Secretary abused his discretion when he discredited "eyewitness testimony without discussion or analysis and sufficient evidence does not support the findings supporting the discussion." *Id*.

Section 1122 of the School Code provides the "only valid causes for termination" of a contract entered into with a tenured professional employee. 24 P.S. § 11-1122. It is the District's burden to prove that a professional employee committed one or more of the statutorily enumerated acts. *Foderaro v. Sch. Dist. of Phila.*, 531 A.2d 570, 571 (Pa. Cmwlth. 1987). Here, the District charged Chek with "persistent negligence in the performance of duties; willful neglect of duties; intemperance; cruelty; and persistent and willful violation of or failure to comply with school laws of this Commonwealth, including official directives and established policy of the board of directors," R.R. at 100a, which are charges expressly provided for in Section 1122 of the School Code.[6] Though the charges are

---

[5] Our review of the Secretary's order is limited to determining whether an error of law was committed, constitutional rights were violated, or necessary findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *McCoy v. Lincoln Intermediate Unit No. 12*, 391 A.2d 1119, 1121 (Pa. Cmwlth. 1978).

[6] Section 1122 provides:

6

provided by Section 1122, the Secretary concluded that the District did not meet its burden of proof because there was "insufficient support in the record" for the allegation that "Chek persistently and willfully violated and/or failed to comply with the school laws of the Commonwealth, including the official directives and established policy of the board of directors." Secretary's Opinion at 16. The Secretary additionally concluded that "Chek was not intemperate and was not cruel." *Id*. Upon review, we agree.

The District alleged that Chek "persistently and willfully" violated or failed to comply with school laws, including official directives and established policy of the Board, but the statement of charges do not specifically identify which law, directives or Board policies that Chek allegedly violated. R.R. at 100a-01a. The basis for the District's charges were the two incidents that occurred on October 2, 2017 and October 13, 2017. *Id*. The Secretary found that with the first incident, a student climbed out of the classroom window and onto the gymnasium roof while Chek was taking roll and could not see the window. F.F. 7-8. The other students in the class told Chek that the student had climbed out the window. F.F. 9. Chek told the student to come back into the classroom and sit down and the student complied.

---

> The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employe shall be immorality; incompetency; unsatisfactory teaching performance based on two (2) consecutive ratings of the employe's teaching performance that are to include classroom observations, not less than four (4) months apart, in which the employe's teaching performance is rated as unsatisfactory; intemperance; cruelty; persistent negligence in the performance of duties; wilful neglect of duties . . . persistent and wilful violation of or failure to comply with school laws of this Commonwealth, including official directives and established policy of the board of directors; on the part of the professional employe . . . .

24 P.S. § 11-1122.

F.F. 10-11. The student was able to climb out of the window because the screws and the grate on the window had been loosened. F.F. 15.

The Secretary found that with the second incident, a student was "tossing a paper plane around a classroom" in which Chek was teaching and "refused to sit down with his classmates." F.F. 21-22. Chek took the paper plane away, crunched it, and threw it in the trash. F.F. 23. The student retaliated by punching Chek in the stomach and sitting at Chek's computer. F.F. 24-25. Chek told the student to get away from the computer and "pulled the student up by the book bag." F.F. 26-27. The student punched Chek again and knocked down a fan. F.F. 28. Chek tried to grab the student's book bag as Chek held the door open and, not expecting the door to be open, the student ran out the door and fell on the floor. F.F. 29-30.

In its statement of charges, the District suggested that Chek violated a law, directive or policy because "there was physical contact" with a student. R.R. at 101a. During the second-level conference, the District noted that Chek agreed that it is improper to "physically touch a student in any way." R.R. at 101a; F.F. 55. The District, however, never alleged that Chek touched a student with the first incident as the basis for this charge was failure to supervise the students in his class. F.F. 19; District Ex. 1. The Secretary's findings do not establish that Chek physically touched the student during the second incident. Moreover, the Department of Human Services concluded that the second incident was unfounded. F.F. 51; Chek Ex. 12.

Additionally, the facts do not support the conclusion that Chek willfully or persistently violated any law, directive or Board policy. *Horton v. Jefferson Cty.-Dubois Area Vocational Tech. Sch.*, 630 A.2d 481, 484 (Pa. Cmwlth. 1993) (stating

8

that willfulness "requires the presence of intention and at least some power of choice" and persistency is "held to exist when the violation occurs either as a series of individual incidents or one incident carried on for a substantial period of time"); *Lucciola v. Sec'y of Educ.*, 360 A.2d 310, 312 (Pa. Cmwlth. 1976). The District alleged with the first incident that Chek failed to supervise his students and alleged with the second incident he used physical force against a student. F.F. 19, 40. However, based on the facts as found by the Secretary, there is nothing to suggest that Chek intentionally failed to supervise his students or that he intentionally sought to physically harm his student. Although there were two incidents that occurred in close proximity, the nature of each incident was very different. *Gobla v. Bd. of Sch. Dirs. of Crestwood Sch. Dist.*, 414 A.2d 772, 775 (Pa. Cmwlth. 1980) (stating that when evaluating persistency it is "in the very nature of the offense that it entails a series of deliberate violations accumulated over a period of time"). These two incidents in close proximity involving very different facts, that is, a student climbing out of a window and Chek's attempt to control a student disrupting the class, do not support a conclusion that Chek's conduct entailed a series of "deliberate violations" over a period of time to show persistency.

Nevertheless, the District asserts that Chek willfully neglected his duties, with respect to the first incident, because he failed to properly supervise the students. District's Brief at 28. The District contends that Chek "regularly took roll from a position where he could not see all of his students, particularly those near a window that he knew a child could open because the safety grill was loose." *Id.* To dismiss a professional employee for willful neglect of duties, a district must show that the employee intentionally disregarded his known duties. *Flickinger v. Lebanon Sch. Dist.*, 898 A.2d 62, 67 (Pa. Cmwlth. 2006) (holding that the failure of a principal

9

to immediately respond to the report of a gun in the school was a choice that he made as he knew he was required to respond immediately to a report of a gun and, therefore, his conduct constituted willful neglect of duty as it placed the students in danger); *Williams v. Joint Operating Comm. of the Clearfield Cty. Vocational-Tech. Sch.*, 824 A.2d 1233 (Pa. Cmwlth. 2003) (holding that assistant director's act of opening bids before the bid submission deadline and discussing the content of the bids with one of the bidders of the project was a willful neglect of duty because doing so was illegal).

Here, however, the District does not explain how Chek's taking roll during class constitutes a failure to supervise his students. Additionally, the District does not explain how Chek's failure to have the grate repaired on the window violated a duty that he owed or knew about and intentionally or purposefully disregarded. Chek reported the loose grate to the custodian, who told him to report it to the building engineer but Chek failed to do so. F.F. 16-18. The District does not cite to any law, policy or Board directive that required Chek to follow up with the building engineer to ensure that the repair was made to his classroom or that he, in any way, intentionally disregarded such a policy or directive to result in the incident.

Next, the District asserts that it had cause to terminate Chek for intemperance and cruelty based on the second incident as it involved a physical altercation with the student. District's Brief at 27. A district may dismiss a professional employee for cruelty when a teacher intentionally and maliciously inflicts physical suffering upon a student. *Blascovich v. Bd. of Sch. Dirs. of Shamokin Area Sch. Dist.*, 410 A.2d 407, 408-09 (Pa. Cmwlth. 1980). A district may dismiss a professional employee for intemperance when the employee exhibits

10

a loss of self-control, which may be inferred from the use of excessive force. *McFerren v. Farrell Area Sch. Dist.*, 993 A.2d 344, 360 (Pa. Cmwlth. 2010); *Belasco v. Bd. of Pub. Educ. of Sch. Dist. of Pittsburgh*, 486 A.2d 538, 541-42 (Pa. Cmwlth. 1985), *aff'd*, 510 A.2d 337 (Pa. 1986). Upon review of the record and the Secretary's findings, however, we agree that there is no evidence to support a conclusion that Chek's conduct was cruel or exhibited a loss of self-control or excessive use of force.

The District argues that Chek acted cruelly and with intemperance, that is, excessive force, because "[a]fter the [student] hit him and played with his fan and computer, Chek threw him out of the room with such force that the [student] hit his head on the lockers across the hallway." District's Brief at 27. In support, the District relies on statements made by the speech language pathologist and the student involved in the incident. The speech pathologist testified that he was in the hallway during the incident and saw the student hit the lockers on the other side of the hallway and slam into the floor. F.F. 38; N.T. 64-69; District Ex. 3. The speech pathologist left the scene to get the school nurse to verify that the student was not injured but by the time he returned, the student had left the area. F.F. 41. The student involved in the incident stated that Chek pushed him out of the classroom. F.F. 31; District Ex. 3. However, the Secretary did not find the speech pathologist or the student's statements credible when evaluated against Chek's testimony.

The Secretary stated:

> I have accepted . . . Chek's testimony to be credible. To the extent . . . Chek's testimony is contradicted by the testimony of the speech language pathologist, I have found the speech language's testimony not credible. To the extent that . . . Chek's statements are contradicted by witness statements in documents where the witnesses did

11

> not appear and confirm those statements at the hearing, I
> have found those statements to be not credible.

*See* Secretary's Opinion at 16. The Secretary is the ultimate fact finder when, as here, he makes findings of fact. *Balog v. McKeesport Area Sch. Dist.*, 484 A.2d 198, 200 (Pa. Cmwlth. 1984). As the ultimate fact finder, the Secretary renders credibility determinations of the witnesses. *Rhodes v. Laurel Highlands Sch. Dist.*, 544 A.2d 562, 565 (Pa. Cmwlth. 1988). Though the District argues that the Secretary's credibility determination regarding the speech language pathologist was "arbitrary and capricious" because it was based on "random or convenient selection," we disagree. District's Brief at 25.

As stated by the Secretary, he reviewed the testimony of Chek and the speech pathologist and made the determination that Chek's testimony was credible. The Secretary accepted Chek's testimony that Chek did not touch the student because Chek tried to grab the student's book bag as Chek held the door open and, apparently not expecting to door to be open, the student ran out the door and fell on the floor. F.F. 29-30; N.T. 94-96; District Ex. 9. The record supports the Secretary's finding as Chek testified:

> Before this incident, [the student] was tossing a paper
> plane all over the place. He refused to sit down with his
> classmates. Eventually, I went and grabbed the plane, the
> paper plane, crunched it up and [threw] it in the trash.
> That's when he hit me in the stomach. I ignore[d] it. I
> thought it was over. Then he sat down.
> Eventually, he got up again because he was upset
> because I took--I'm assuming because I took the paper
> airplane away from him. So then he proceed to move
> around the room.

Eventually, he moved towards my laptop where I take roll. I asked [the student] to please get up, go back to his seat. He ignored me. I asked him a couple of times to --and eventually I walked over to close my laptop. I let him sit there but I closed my laptop.

Then he opened it back up again. So I close[d] it again. Then he got real angry. He got up. Hit me in the stomach. Knock a fan down and ran toward the door. Ran full speed toward the door.

I'm trying to grab him. Ran up to him and . . . I tried to--the backpack here and I tried to lift it like that. He had his backpack on, lift with my thumb, tried to lift him up like that. That's when he got upset and hit me. Knocked the fan down and ran out the door.

Q. He ran out the door?

A. Yes. He ran, he definitely ran and then when I tried--when I almost like got him, like grab--touch his backpack and he just went through and dove. He dove toward the--out the hallway. Then he land. . . .

Q. When you say he went to run out of the classroom--

A. Yes.

Q. --and what did you do? You said you touched the backpack, what were you trying to do with the backpack at that point?

A. Trying to prevent him from running out.

Q. How did you grab it? Did you grab the top of it or what did you do?

A. Grab the top. Tried to grab the top, but he just ran. He's running full force, so it's hard to--he just--it happened so fast. So, like, then I closed the door.

Q. Did you push him at any point?

A. No.

N.T. 93-96. Chek further testified that about 15 minutes or less after the incident the student walked by the classroom. Chek noted: "I saw him, he was coming up from the room, walking after his statement from the statement room and he looked at me, he just smiled and walked on and that was it. So I assumed he wasn't hurt. . . ." N.T. 114. *See* F.F. 42 (finding that "Chek saw the student walking by his classroom

13

approximately 15 minutes later and assumed he was not injured"). Because Secretary's findings of fact are supported by competent evidence, we must accept those findings on appeal. *Balog*, 484 A.2d at 200.

Based upon a review of the Secretary's findings, which are supported by competent evidence of record, the Secretary appropriately concluded that Chek's conduct was not cruel and did not demonstrate a loss of self-control or excessive force to support the charge for intemperance. Therefore, the District did not meet its burden of showing valid cause to terminate Chek from his employment pursuant to Section 1122 of the School Code.[7]

Accordingly, we affirm the order of the Secretary.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[7] Based on our conclusion with respect to this issue, we need not address the District's arguments regarding its compliance with the procedures of the School Code.

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

School District of Philadelphia,     :
           Petitioner     :
        :
       v.         :
        :
Sonarith Chek,        :     No. 1266 C.D. 2019
           Respondent     :

## O R D E R

AND NOW, this 7th day of July, 2020, the August 15, 2019 order of the Secretary of Education reversing the termination of Sonarith Chek and reinstating him as a professional employee is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge